UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARCY M. BLACK,

                            Plaintiff,

                                                        **Hon. Hugh B. Scott**

                                                        15CV49S

                    v.                                  **Order**


BUFFALO MEAT SERVICE, INC.,
doing business as BOULEVARD BLACK
ANGUS, et al.

                            Defendants.

---

        Before the Court is plaintiff's motion compelling complete responses to her discovery

demands, leave to serve Interrogatories in excess of 25 Interrogatories, extension of the

Scheduling Order (Docket No. 22), and expedited hearing (Docket No. 23).  In scheduling this

motion, plaintiff's motion for an expedited hearing was granted in part, denied in part, in that the

Scheduling Order deadline plaintiff wished to meet was held in abeyance pending resolution of

this motion (Docket No. 24).  Responses to this motion were due by July 20, 2016, with any

replies due by August 2, 2016 (id.); defendants submitted their timely response (Docket No. 25,

Defs. Memo.) and plaintiff replied (Docket No. 26, Pl. Atty. Reply Decl.; Pl. Reply Memo.).

This motion was deemed submitted on August 3, 2016.

BACKGROUND

Plaintiff makes claims under several civil rights and employment discrimination laws (Title VII, the Civil Rights Act of 1964, the Equal Pay Act, 42 U.S.C. § 1981, New York State Human Rights Law) contending that defendant employers created a hostile work environment on the basis of race and sex and had constructively discharged plaintiff (Docket No. 2, Compl.). She claims that male coworkers were paid more than she was and were allowed more breaks than she was; that her coworkers made sexual and racial comments; that the shop rejected African American applicants (although plaintiff is a Caucasian female); and a coworker allegedly made comments regarding mixed race children (see id.; Docket No. 25, Defs. Memo. at 1).

Defendants answered (Docket No. 8), asserting 28 affirmative defenses, about half of them declaring that each of plaintiff's ten causes of action failed to state a claim (id. ¶¶ 154-82; see also id. at pages 17-18 (Reservation of Rights as to named affirmative rights and reserve right to other, unnamed defenses)).  This case was referred to the undersigned (Docket No. 9) and a Scheduling Order was entered (Docket No. 13; see Docket Nos. 10, 11 (plaintiff's proposed discovery plan), 12 (minutes from scheduling conference)) and later amended (Docket No. 22).  As so amended, discovery was to be completed by August 29, 2016, with plaintiff's expert disclosure due by July 11, 2016 (Docket No. 22; see Docket No. 23, Pl. Memo. at 22).

*Plaintiff's Motion*

On January 27, 2016, plaintiff served her discovery demands, including Interrogatories (Docket No. 23; id., Pl. Atty. Decl. ¶ 5, Ex. A).  Having received no responses, plaintiff's counsel on March 21, 2016, wrote to defense counsel requesting responses (Docket No. 23, Pl. Memo. at 1-2).  Defendants responded, on March 23, 2016, that they were preparing responses

(id. at 2).  On April 14, 2016, plaintiff wrote again, noting that no responses were received and requesting responses by April 21, 2016 (id.).  Defendants wrote back saying that responses should be received by April 18, 2016 (id.), with them serving their response to the Request for Production of Documents (id.).  Defendants refused to respond to the Interrogatories contending that they exceeded the 25 Interrogatory limit under Rule 33 (id.).  Plaintiff responded with a six-page letter addressing defense objections and attempting to obtain compliance without Court intervention (id.; Docket No. 23, Pl. Atty. Decl. ¶ 12, Ex. I).  Plaintiff agreed to withdraw Interrogatory 16 and its subparts, but requested defendants respond to Interrogatories 1-15 (Docket No. 23, Pl. Atty. Decl. ¶ 12; Docket No. 23, Pl. Memo. at 2).  Defendants replied that they would review their materials to see if additional documents needed to be produced but disagreed with plaintiff's objections to the Interrogatory answers because they believed that Interrogatories Nos. 1-15 (with subparts) exceed 25 (Docket No. 23, Pl. Memo. at 2-3).  Instead, defendants offered to answer the first 25 Interrogatories (including subparts) (id. at 3).

In the May 6, 2016, letter, plaintiff detailed the open responses to her document demands and the unanswered Interrogatories (Docket No. 23, Pl. Atty. Decl., Ex. I).  Defendants had produced a copy of the EEOC file, "limited personnel documents of 16 of the 25 people listed in Plaintiff's request . . . ; and payroll records from 2005 to 2010" (id., May 6, 2016, letter at 1).  Plaintiff noted that defendants did not produce personnel documents for eight people, either people allegedly involved in discrimination or employees similarly situated as plaintiff (id.) and produced "very limited personnel documents" for others, including plaintiff's records (id. at 2).  Plaintiff next complains that defendants did not produce documents identified in four categories set forth in their initial Rule 26(a) disclosure (id.).  Plaintiff next seeks all documents pertaining

3

to "any meetings, discussions, encounters and/or conversations" that defendants had with respect to plaintiff, her employment, her discrimination complaints, harassment, hostile work environment, and/or retaliation beyond the EEOC file (id. at 2-3).  Plaintiff next seeks all documents in defense possession related to her discrimination and retaliation claims, despite defendants' claims that this request was overly broad (id. at 3).  Plaintiff's Request 5 sought recordings of communications by plaintiff or other employees regarding her, her employment relationship and/or her claims, again deemed overly broad by defendants (id.).  She sought clarification of the response to Request 7, seeking exit interview documents, which defendants claim were not in her personnel file (id.).  Plaintiff, for Request 8, still seeks production of employee manuals, policies, procedures, and handbooks (id. at 3-4).  As for Request 12, plaintiff complains that W-2 statements, Form 1099, and other tax documents were not produced (id. at 4) and payroll records (responsive to Request 13) were also incomplete, needed by plaintiff for her Equal Pay Act claim (id.).  On Request 19, plaintiff sought documents of job postings, the assessment of each applicant, selection criteria, and interview notes but defendants did not produce job postings, assessments, selection criteria and interview notes (id.).  Aside from the produced EEOC record, plaintiff claims that defendants did not produce other responsive documents to her Request 20, of all documents relating to inquiries or investigations conducted as a result of her claims (id.).  Defendants also did not produce other investigations into race discrimination, sex discrimination, harassment, hostile work environment or retaliation claims made by others (id. at 4-5).

Plaintiff sought documents from interviews with witnesses or employees of Buffalo Meat Service, Inc., in particular Mr. Roberts' alleged interviews (id. at 5).  Plaintiff still seeks emails

between defendants about plaintiff or incidents in this case (id.) as well as documents concerning statements of racial, ethnic or sexual references (id.).  Plaintiff argues that the January 2004 to present time period for all documents regarding any employee being absent from work is appropriate (id.).  She also sought all documents concerning complaints about the conduct of ten employees, either those who engaged in discriminatory acts against her or were claimed comparators (id. at 5-6)  Plaintiff argues that her requests for work schedules and assignments of other employees from January 2004 is relevant to her claim because she contends that her time was more closely scrutinized and that she seeks back pay as a remedy (id. at 6).  As for complaints by any other employee about plaintiff, she claims that defendants' response is incomplete since it only relies upon the produced EEOC file (id.).  Finally, plaintiff seeks a privilege log rather than "blindly stipulate that all communication between a party and counsel need not be listed on a privilege log" (id.).  (See generally Docket No. 23, Pl. Atty. Decl. ¶¶ 15-34; Docket No. 23, Pl. Memo. at 4-18.)

Plaintiff moved to compel production (Docket No. 23), arguing why each request was relevant to her claims (see id., Pl. Memo. at 4-18).  As for the Interrogatories, plaintiff cites commentary that defines a subpart as being discrete from a question if it poses a question independent from the other question (id. at 18, citing Security Ins. Co. of Hartford v. Trustmark Ins. Co., No. Civ. 3:01CV2198, 2003 WL 22326563 (D. Conn. Mar. 7, 2003); Moore's Federal Practice § 33.30[2] (3d ed. 2003) ("the better view is that subparts be counted as part of one interrogatory if they are logically and necessarily related to the primary question").  She then describes each Interrogatory and the subparts of those queries (id. at 18-21), concluding that she

posed 15 Interrogatories with subparts that were "factually subsumed within and necessarily

related to the primary" questions (id. at 21).

A review of these Interrogatories (Docket No. 23, Pl. Atty. Decl. Ex. A) reveals

Interrogatories with subparts as follows[1]:

| Interrogatory | Question and Number of Subparts |
|---|---|
| 1 | 0 + 4 |
| 2 | 1 + 8 |
| 3 | 1 + 4 |
| 4 | 1 + 6 |
| 5 | 1 + 12 |
| 6 | 1 |
| 7 | 1 + 6 |
| 8 | 1 + 3 |
| 9 | 1 + 1 |
| 10 | 0 + 34 |
| 11 | 1 |
| 12 | 1 + 10 |
| 13 | 1 |
| 14 | 1 + 9 |
| 15 | 1 |
|  |  |
| Total Subparts | 98 |
| Total Subparts and Questions | 112 |

(See Docket No. 25, Defs. Memo. at 10.)  Interrogatory 16, asking about defendants' affirmative

defenses, contains 19 subparts (Docket No. 23, Pl. Atty. Decl. Ex. A).

The issue here is how many of these subparts are sufficiently free standing to be seen as

distinct questions to count as a separate Interrogatory under the 25 Interrogatory limit.

_____

[1]A question is counted toward the total number of Interrogatories if it asks for information but not if it prefaces subparts which ask questions.  For example, Interrogatory 1 merely prefaces the following four subpart questions.  This is the same for Interrogatory 12.d. and its seven sub-subparts.

Interrogatory 14 seeks information obtainable as expert disclosure under Rule 26(a)(2).

Plaintiff now requests leave to pose Interrogatory 16, with its subparts, which (if added to the previous Interrogatories) would exceed the 25-Interrogatory limit (Docket No. 23, Pl. Memo. at 21).  Defendants contend that plaintiff now concedes that these subparts are discrete (Docket No. 25, Defs. Memo. at 10; see Docket No. 23, Pl. Atty. Decl. ¶ 51).

Plaintiff contends that she could not identify her experts and render their reports without complete discovery from defendants and wage and benefit information that was not furnished (id.).  This production would not be made in time to meet the First Amended Scheduling Order deadlines for plaintiff's expert disclosure and completion of discovery, therefore, plaintiff also moves for extension of the deadlines by 60 days from when defendants serve their responses (id.).

Defendants respond, first, that plaintiff failed to comply with the meet and confer requirement for her motion to compel, hence that motion should be denied, concluding that two letters and an email sent by plaintiff's counsel does not constitute meeting and conferring (Docket No. 25, Defs. Memo. at 3-4).  Instead of reviewing initial disclosure, pre-suit disclosures to the EEOC, plaintiff made her discovery demands, seeking documents in 90 different requests and posing over 100 Interrogatories (id. at 1-2).

Defendants first gave plaintiff the opportunity to ask the 25 Interrogatories she wanted answered (rather than defendants merely answering the first 25 posed) (id. at 2).  Even after plaintiff offered not to have Interrogatory 16 answered, the remaining Interrogatories still exceed 25 (id.).  Defendants then offered to answer the first 25 Interrogatories, but plaintiff never responded to this offer, but moved to compel instead (id.).

Regarding the document demands, defendants contend that (under the recently amended Rule 26(b)(1)) they are disproportionate to plaintiff's claims and the issues in this case, for example, seeking every type of document involved in the employment relationship (id. at 4-8). Defendants contend that, while there is a strong public policy against employment discrimination, "that policy cannot justify the service of Plaintiff's sweeping discovery requests in a run-of-the-mill employment discrimination case arising from a white female's part-time job as a front counter worker at a butcher shop," having worked there for only five years (id. at 5). In discussing the other factors for proportionality, Fed. R. Civ. P. 26(b)(1) (2015) (id. at 5-6), defendants argue that plaintiff had the EEOC record which would provide a roadmap for further discovery rather than the blanket requests proposed (id. at 5) and that the single butcher shop at issue here did not generate the amount of paper and electronic documents plaintiff now seeks (id. at 6).  Defendants argue that the burden of plaintiff's document demands is unduly burdensome and disproportionate to the issues in this case (id.).  Despite the breadth of the requests, defendants have produced over 500 pages of responsive documents (save those related to comparators' earnings for the Equal Pay Act claim) (id. at 8).  As for plaintiff's contention that defendants failed to produce a privilege log, defendants counter that they are prepared to stipulate that attorney to client communication need not be listed on a privilege log (id. at 10), but fail to address creation of a privilege log.

Plaintiff replies that defendants merely argue that the motion is premature because the meet and confer requirement was not fully met but she contends that the meet and confer requirement was met (Docket No. 36, Pl. Reply Memo. at 1, 2), that the requests were overly broad in proportion to the issues in the case (id. at 1, 4-7), and that plaintiff exceeded the limit

for the number of Interrogatories (id. at 1, 7-9).  As for defense proportionality arguments,
plaintiff replies that they are merely recast overburden arguments and that defendants have a
burden to show undue burden or expense before obtaining relief from otherwise relevant
discovery demands (id. at 5).  She also notes that defendants do not object to extending the
Scheduling Order (id. at 9-10).

DISCUSSION

I.      Complete Discovery Responses

        Discovery under the Federal Rules is intended to reveal relevant documents and
testimony, but this process is supposed to occur with a minimum of judicial intervention.  See
8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure
§ 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense proportional to the needs of
the case, considering the importance of the issues at stake in the action, the amount in
controversy, the parties' relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the burden or expense of the
proposed discovery outweighs its likely benefit. Information within this scope of discovery need
not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1) (effective Dec. 1,
2015) (emphasis added).  This amended rule is applicable in this case, see Fed. R. Civ.
P. 86(a)(2) (amendments govern "proceedings after that date [specified as effective date by the
Supreme Court] in an action then pending unless" Supreme Court specifies otherwise or "the
court determines that applying them in a particular action would be infeasible or work an
injustice").

9

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective order. Seattle Times, supra, 467 U.S. at 36.

A.    Meet and Confer Obligations

Defendants argue that plaintiff's two letters and single email requesting production were not sufficient to comply with the meet and confer obligations prior to plaintiff's motion. The

10

cases cited by defendants for the proposition that the meet and confer obligations require actual meeting of the parties, Dorchester Fin. Holdings Corp. v. Banco Brj. S.A., No. 11-CV-1529, 2014 U.S. Dist. LEXIS 96101, at *11-12 (S.D.N.Y. July 3, 2014) (Fox, Mag. J.) (quoting Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590, 1998 U.S. Dist. LEXIS 1826, at *7 (S.D.N.Y. Feb. 18, 1998) (Francis, Mag. J.) (internal quotation and citation omitted)) (Docket No. 25, Defs. Memo. at 3-4), or failing to meet at all, see Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088, 2016 U.S. Dist. LEXIS 18460, at *33 (S.D.N.Y. Feb. 16, 2016) (Pitman, Mag. J.) (id. at 4), are distinguishable.  Both cases involved whether the parties engaged in efforts to resolve the discovery disputes before them prior to the movant's action.  In Vaigasi, the court had ordered plaintiff to reconsider his discovery demands but plaintiff refused and the email exchange between the parties revealed plaintiff insisting upon his earlier demands, leading the court to conclude that plaintiff's representation that he met with defense counsel in good faith was not credible, 2016 U.S. Dist. LEXIS 18460, at *32-33.

In Brown v. Lian, No. 10CV396, 2011 U.S. Dist. LEXIS 111547 (W.D.N.Y. Sept. 29, 2011) (Scott, Mag. J.), this Court held that a pro se inmate litigant could not rely upon a few emails as a good faith effort to meet and confer with opposing counsel where otherwise plaintiff had not recited his efforts in attempting to resolve the matter with opponents, id. at *8-9.  The generic response from that plaintiff that he wrote numerous times attempting to obtain discovery was deemed insufficient certification of attempts to obtain relief short of a motion, id. at *9.

Here, however, the exchanges of correspondence between counsel shows the attempts of plaintiff to obtain her discovery responses short of the present motion, see also Scott-Iverson v. Independent Health Ass'n, No. 13CV451, 2016 U.S. Dist. LEXIS 50419, at *7 (W.D.N.Y.

Apr. 14, 2016) (Foschio, Mag. J.) (defendant satisfied meet and confer prerequisite for discovery

fee award by communicating with plaintiff in a letter, two emails, one telephone call, and a text

message to avoid the motion to compel); Talley v. Chautauqua Hills Ministry, Inc., No. 14-CV-

309, 2015 U.S. Dist. LEXIS 135845, at *12 (W.D.N.Y. Oct. 5, 2015) (Scott, Mag. J.) (citing

U.S. Bancorp Equip. Fin., Inc. v. Babylon Transit, Inc., 270 F.R.D. 136, 140-41 (E.D.N.Y.

2010), that email exchange and other communication can constitute meeting and conferring).

The purpose of certifying meeting and conferring (or attempting to do so) is to show the

correspondence and exchange between the movant and opponent so that resort to the motion to

compel appears to be a last resort rather than a first option.  Here, plaintiff submits her

correspondence renewing her requests for discovery and defendants' responses.  While in other

cases there may have been more correspondence and actual meetings (or scheduling of meetings)

between the parties to resolve discovery disputes, plaintiff here **has satisfactorily certified her**

**attempts to obtain these responses short of the present motion to compel by communicating**

**with defense counsel**.  That correspondence shows that the issues have been crystalized and

neither side is surprised by a contention now raised in this motion that could have been made had

a meeting been held, a telephone call made or a letter or email sent.

Thus, this Court next considers the merits of plaintiff's motion to compel.

B.     Document Production and Proportionality

Defendants argue that, under the newly amended Rule 26(b)(1), plaintiff's document

requests are out of proportion with the issues at stake in the case.  Nevertheless, they contend

that they produced 500 pages of responsive documents in what they believe is a simple

employment discrimination case (Docket No. 25, Defs. Memo. at 8, 4-8).  Plaintiff does not

reply whether the documents produced are sufficient but defends her requests as being proportional to her claims because they are relevant to her claims.  Defendants concede that records of earnings of comparators has yet to be produced, but were made available for inspection at a mutually convenient time and date yet to be set by the parties (id. at 8-9).

The Supreme Court approved amendments to Rule 26(b) in 2015 which relocate proportionality language that appeared in other parts of Rule 26 since 1983 (Fed. R. Civ. P. 26(g) (1993)) to the forefront.  The latest amendments restored proportionality factors "to their original place in defining the scope of discovery," Fed. R. Civ. P. 26 advisory committee's notes 2015 amendments.  Relevance under Rule 26(b)(1) is now tempered by proportionality; particular items may be relevant but discovery to obtain them may not be proportionate for that case.  These amendments would have the parties consider these factors in making their discovery requests, id., even at the Rule 26(f) conference among the parties and at the Rule 16 scheduling conference with the Court, id..  Another intention of this amendment was to have "greater judicial involvement in the discovery process," id. (quoting Fed. R. Civ. P. 26 advisory committee's notes 1983 amendments), to avoid discovery becoming "an instrument for delay or oppression," id. (quoting Fed. R. Civ. P. 26 advisory committee's notes 1993 amendments).  The Advisory Committee opined that "it is expected that discovery will be effectively managed by the parties in many cases.  But there will be important occasions for judicial management, both when the parties are legitimately unable to resolve important differences and when the parties fall short of effective, cooperative management on their own," id.  Or as one commentator summarized, under this amendment "the universe of discoverable information is smaller than before.  We [parties] should not need to produce as much.  We should not expect to get as much.

13

The boundary between discoverable and non-discoverable information remains blurry," Kenneth Berman, Reinventing Discovery under the New Federal Rules, 42 Litigation 1, 5 (Spr. 2016), where "instead of fencing over whether the requested information is related to the subject matter or likely to lead to admissible evidence, the parties will fight over whether the information is relevant to a party's claim or defense," and "proportionality will be the key metric by which discovery requests and objections will be measured, and it will be the primary basis on which discovery disputes will be decided.  Almost always, whichever side appears more reasonable will be better off," id.  In effect, the concept of undue burden that has been in Rule 26 for the last thirty plus years has been replaced by proportionality, with the burden as one factor to determine whether the discovery demand is proportionate to the case.

While proportionality ultimately will be hashed out on a case-by-case basis, here defendants already responded to plaintiff's demands, producing some 500 pages including the EEOC record.  This Court recited plaintiff's May 6, 2016, letter listing its outstanding document requests and her commentary opposing defense objections in seeking that production.  Looking at the totality of the complained requests as compared with the claims at issue, the extent of the requests is disproportionate to the claims at issue.  Prior to the 2015 amendments, defendants would have to show that the requests were unduly burdensome; now, the issue is whether the quantity of requests for relevant material is such that it is out of proportion to the scope of the case (be it in the case's monetary value, the parties' resources and relative access to information, the importance of the discovery in resolving the case, see Fed. R. Civ. P. 26(b)(1) (2015)).  Even with her claims covering several areas of employment discrimination (equal pay, civil rights violations under federal and New York State law, race and sex discrimination, retaliation),

14

plaintiff seeks broad categories of documents beyond the scope of the EEOC complaint that preceded the Title VII and Equal Pay Act where some of the requests overlap (for example, documents regarding meetings held about plaintiff and emails exchanged about her).

Defendants produced documents from the EEOC file and stated their intention to serve earning records for plaintiff's comparable subjects.  This production **is sufficient and proportionate given the nature and scope of this action** (save additional production for her Equal Pay Act claims) and plaintiff's motion to compel more (Docket No. 23) is **denied**.

C.      Privilege Log

Defendants offer to stipulate to what need not be in a privilege log (cf. Docket No. 25, Defs. Memo. at 10), but does not indicate when such a log is produced.  Since the stipulation was never entered into, defendants **are to produce a privilege log**, including attorney-client correspondence.

II.      Leave to Serve More Interrogatories

Rule 33 provides that a party can serve "no more than 25 written interrogatories, including all discrete subparts," Fed. R. Civ. P. 33(a)(1), requiring leave of the Court to exceed this ceiling consistent with the standards of Federal Rule 26(b)(1) and (2), Fed. R. Civ. P. 33(a)(1).  The idea behind this rule (and similar rules enacted in 1993 and later) is to limit the size and scope of this discovery device and "to reduce the frequency and increase the efficiency of interrogatory practice," Fed. R. Civ. P. 33, advisory committee's notes 1993 amendment. While a party cannot evade this limit by joining as subparts questions seeking distinct information, queries about communication that ask for the facts of its transmission, i.e., time,

place, persons present, and contents, can be asked separately but count as a single Interrogatory, id.; Pouncil v. Branch Law Firm, 277 F.R.D. 642, 646 (D. Kan. 2011).

A.      Interrogatories 1-15

The amendments to the Federal Rules in 1993 and 2000 now require parties to limit the number of their interrogatories.  Interrogatories "without leave of court or written stipulation" may not exceed 25 in number including discrete subparts, Fed. R. Civ. P. 33(a).  While the Federal Rules have no express limit on the number of document requests, see 7 Moore's Federal Practice, § 34.02[3], at 34-11 (2006), by local rule this Court capped the number of document requests to 25, including discrete subparts, W.D.N.Y. Loc. Civ. R. 34.  The Court has the discretion to expand the number of Interrogatories beyond this limit, see Atkinson v. Denton Pub. Co., 84 F.3d 144, 148 (5th Cir. 1996), as it has the broad discretion whether to require an answer to an Interrogatory, see 8A Federal Practice and Procedure, supra, § 2176, at 311.

"The point of interrogatories is to obtain a party's admissions and contentions under oath and to narrow the issues in the case," Life Music v. Broadcast Music, Inc., 41 F.R.D. 16, 26 (S.D.N.Y. 1966).  Interrogatories may not be used to bypass the document production procedure of Rule 34, 8A Federal Practice and Procedure, supra, § 2163, at 221.  If a party serves more than 25 Interrogatories without leave they have the choice of either specifying which Interrogatories (up to 25) they want answered or resubmitting complying interrogatories, id. § 2168.1, at 262-63. The party seeking leave to serve more than 25 interrogatories "must set forth a 'particularized showing'" to exceed the limit, Duncan v. Paragon Publ'g, Inc., 204 F.R.D. 127, 128 (S.D. Ind. 2001) (quoting Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 187 F.R.D. 578, 586 (D. Minn. 1999)).  Courts grant leave to exceed the limit when the benefit of discovery

16

outweighs the potential burden on the responding party, 7 <u>Moore's Federal Practice</u>, <u>supra</u>,

§ 33.40, at 33-42, § 33.30[3][b], at 33-38. Courts generally deny requests for more than 25

interrogatories initially, preferring instead to consider requests to add interrogatories after a party

has served 25 interrogatories and argues that additional interrogatories are needed, 7 <u>Moore's</u>

<u>Federal Practice</u>, <u>supra</u>, § 33/30[3][b], at 33-38.1; <u>see</u> <u>Duncan</u>, <u>supra</u>, 204 F.R.D. at 129.

The issue here for the first 15 Interrogatories is whether the 98 subparts (of the total of

112 questions) are sufficiently distinct from the main questions to count as a separate

"Interrogatory."  Subparts are counted as discrete subparts and, in effect, are distinct

Interrogatories "if they are not logically or factually subsumed within and necessarily related to

the primary question," <u>Krawczyk v. City of Dallas</u>, No. 3:03-CV-0584-D, 2004 U.S. Dist.

LEXIS 30011, at *7 (N.D. Tex. Feb. 27, 2004) (Ramirez, Mag. J.) (quotation marks and citations

omitted); <u>Cramer v. Fedco Auto. Components Co.</u>, No. 01CV757, 2004 U.S. Dist. LEXIS 13817,

at *13 (W.D.N.Y. May 26, 2004) (Elfvin, J.).  "If the first question can be answered fully and

completely without answering the second question, then the second question is totally

independent of the first and not 'factually subsumed within and necessarily related to the primary

question,'" <u>Krawczyk</u>, <u>supra</u>, 2004 U.S. Dist. LEXIS 30011, at *7 (quoting <u>Kendall v. GES</u>

<u>Exposition Servs., Inc.</u>, 174 F.R.D. 684, 686 (D. Nev. 1997)).

In <u>Pouncil</u>, the United States District Court for the District of Kansas applied the

common theme approach and found several Interrogatories with subparts were not deemed

separate questions but were related to the common theme.  For example, where affirmative

defenses were closely related, 277 F.R.D. at 647, the handling of a particular claim, <u>id.</u> at 647-48,

or identification in detail of those who worked on the estate at issue there, <u>id.</u> at 648, while

17

another Interrogatory asking about seven causes of action was deemed to be seven distinct

Interrogatories, id. at 646-47, 648.  In Cramer, however, Judge Elfvin found that 18 of the 25

individual Interrogatories posed there could not "be fairly characterized as so closely interrelated

to the first part of the numbered request to constitute a single interrogatory," 2004 U.S. Dist.

LEXIS 13817, at *14.

        Here, plaintiff posed over 100 questions (including the subparts) in Interrogatories 1-15.

A review of the Interrogatories (Docket No. 23, Pl. Atty. Decl. Ex. A) reveals that the subparts of

Interrogatories 1-15 pose distinct questions such as to not "constitute a single interrogatory," id.

The discovery sought by these Interrogatories is outweighed by the burden they impose upon

defendants to answer them.  Plaintiff has other means to obtain this information.  For example,

Interrogatory 14 seeks expert disclosure which should be produced pursuant to Rule 26(a)(2).

Plaintiff's motion for to compel answers to all of these Interrogatories (Docket No. 23) is

**denied**; plaintiff has the option of recasting Interrogatories up to the maximum of 25 questions

or identifying which of Interrogatories 1-15 (with subparts) she wants answered, up to 25

questions allowed by Rule 33 and this Order.

        B.      Interrogatory 16

        Plaintiff concedes that Interrogatory 16, when added to the previous 15 and subparts

would exceed the 25 Interrogatory limit.  With its 19 subparts and each addressing a distinct

affirmative defense, leave would be required to exceed the Rule 33 limit.  Since these questions

address defenses, while Interrogatories 1-15 dealt with plaintiff's claims, **leave is granted** for

plaintiff to seek answers to Interrogatory 16.  Notwithstanding the limitation imposed above for

the questions from Interrogatories 1-15, this Interrogatory 16 is outside of the limit imposed for Interrogatories 1-15 or the subjects thereof and leave is given to ask these additional questions.

III.     Amend Scheduling Order

In granting in part plaintiff's motion for an expedited hearing of this motion by holding the First Amended Scheduling Order in abeyance (Docket No. 24) the Scheduling Order needs to be amended.  As she notes (Docket No. 26, Pl. Reply Memo. at 9), defendants have not opposed extension of discovery deadlines in this case.

Plaintiff initially sought to extend discovery deadlines by 60 days from when defendants serve the outstanding discovery responses (Docket No. 23, Pl. Notice of Motion).  Rather than tie deadlines to when defendants comply (given that this Court denied complying some aspects of plaintiff's sought discovery), this Court will reset the schedule with dates running from 75 days from entry of this Order in order to give parties sufficient time for plaintiff to identify or recast her Interrogatories and defendants time to complete their responses.

As a result, the deadlines of the First Amended Scheduling Order (Docket No. 22) are superseded as follows:

SECOND AMENDED SCHEDULING ORDER

- Plaintiff's expert disclosure due by **October 31, 2016**;

- Defendants' expert disclosure due by **November 30, 2016**;

- All discovery is to be completed by **December 15, 2016**;

- Dispositive motions are due by **March 15, 2017**;

- Referral to mediation ends by **March 23, 2017**;

19

- If no motions are filed, a status report is due by **March 23, 2017**, to the Chambers of the undersigned.  A Status Conference will be held on **Wednesday, April 12, 2017, at 10:30 am**, before the undersigned to discuss the readiness of the case for trial before Judge William Skretny.

CONCLUSION

For the reasons stated above, plaintiff's motion (Docket No. 23) to compel is **granted in part, denied in part**, specifically, her motion to compel document production is **granted in part** (privilege log**), denied in part** (regarding the proportionality of the outstanding document requests), but her motion to compel answers to her present Interrogatories 1-15 is **denied** (with plaintiff having leave either to identify which 25 questions she wants answered or recasting these questions up to 25); her motion for leave to serve more than 25 Interrogatories (including subparts) is **granted**, specifically leave is granted for plaintiff to ask Interrogatory 16 and its distinct subparts.  Plaintiff's motion (<u>id.</u>) to extend the First Amended Scheduling Order (Docket No. 22) is **granted**; the Second Amended Scheduling Order is presented above.

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      August 16, 2016

20