UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARCY M. BLACK,

                                    Plaintiff,

                                                              **Hon. Hugh B. Scott**

                                                              15CV49S

                        v.                                    **Order**

BUFFALO MEAT SERVICE, INC., et al.,

                                    Defendants.


Before the Court are a series of discovery and related motions and cross-motions, in a

case in which numerous discovery and related motions have already been filed (see Docket

Nos. 23, 28, 34, 62 (plaintiff's motions), 36, 42, 63 (defense motions); familiarity with these

motions and the Orders disposing of them, Docket Nos. 27[1], 32[2], 40[3], 48[4], 65 (minute entry); see

also Docket No. 54, Order of Aug. 3, 2017, regarding recovery of motion costs and fees[5]), is

presumed.

---

[1]Black v. Buffalo Meat Serv., No. 15CV49, 2016 U.S. Dist. LEXIS 108526 (Aug. 16, 2016) (Scott, Mag.
J.).
[2]Black v. Buffalo Meat Serv., No. 15CV49, 2016 U.S. Dist. LEXIS 164441 (Nov. 29, 2018) (Scott, Mag.
J.).
[3]Black v. Buffalo Meat Serv., No. 15CV49, 2017 U.S. Dist. LEXIS 49145 (Mar. 31, 2017) (Scott, Mag. J.).
[4]Black v. Buffalo Meat Serv., No. 15CV49, 2017 U.S. Dist. LEXIS 97495 (Jun. 23, 2017) (Scott, Mag. J.).
[5]Black v. Buffalo Meat Serv., No. 15CV49, 2017 U.S. Dist. LEXIS 122618 (Aug. 3, 2017) (Scott, Mag. J.).

First, defendants move to compel plaintiff to continue her deposition and to answer questions about what she told her bankruptcy counsel about the present action (Docket No. 67[6]). Responses to this motion were due by April 17, 2018 (Docket No. 68). This Order also held in abeyance the current Amended Scheduling Order (Docket No. 66) deadlines (Docket No. 68).

Plaintiff then cross-moved to compel compliance with this Court's Local Civil Rule 26(d) regarding privileges, also seeking to recover attorneys' fees and costs as sanctions (Docket No. 69[7]). Defendants then moved to strike this cross-motion as an untimely motion to compel (discovery) (Docket No. 70[8]) and for an expedited hearing (Docket No. 71). This Court scheduled a status conference to discuss the issues arising in these motions prior to full, formal briefing with termination of the defense motion for an expedited hearing (Docket No. 72). Due to counsel's availability, the Court rescheduled that conference (Docket Nos. 74, 75; see Docket Nos. 73, 76) before canceling it entirely and setting a briefing schedule for now the three pending motions (Docket No. 77). Responses to the three motions then were due by June 5, 2018, replies by June 15, 2018, and argument was scheduled for June 19, 2018 (Docket No. 77).

---

[6]In support of this motion, defendants submit the following: defendants' Memorandum of Law; defense counsel's Affirmation, with Exhibits, Docket No. 67. These exhibits are plaintiff's deposition transcript of March 14, 2018, id., Ex. A; the docket in In re Darcy M. Hoefert, 09-10778-MJK (U.S. Bankr. Ct., W.D.N.Y.), id., Ex. B; the bankruptcy Petition, id., Ex. C; the bankruptcy discharge Order, id., Ex. D. These moving papers total 424 pages. Also in support, their responses, Docket No. 79, defense counsel's opposing Declaration, and Memorandum of Law in Opposition, and reply, Docket No. 80, defendants' attorney reply Declaration; defense Reply Memorandum of Law.

[7]In support of her cross-motion (and in opposition to defendants' motion), plaintiff submits plaintiff's Memorandum; plaintiff's attorney's Declaration with exhibits, Docket No 69. These exhibits are the deposition transcripts of defendants and defense witnesses, id. ¶ 4, Exs. A-G; defendants' enclosure letter, dated January 17, 2018, id. ¶ 20, Ex. H; defendants Robert and Diane Siebert letter, dated January 29, 2011, id. ¶ 35, Ex. I; and plaintiff's EEOC charge, id. ¶ 53, Ex. J. These moving papers total 2,287 pages. Also in support of this cross-motion and in opposition to defense motion are the response, Docket No. 78, plaintiff's attorney Declaration, and reply papers, Docket No. 82 (plaintiff's Reply Memorandum; plaintiff's attorney Reply Declaration with exhibits).

[8]In support of this motion is defense counsel's Affirmation, Docket No. 70; and defendants' Reply Memorandum of Law, Docket No. 81.

The parties duly responded to the respective opposing motions (Docket Nos. 78 (plaintiff's opposition), 79 (defendants' opposition)) and replied (Docket Nos. 80, 81 (defendants), 82 (plaintiff)). Argument then was held on June 19, 2018 (Docket No. 83 (minutes)), and the motions were deemed submitted.

## BACKGROUND

Plaintiff here claims she was discriminated against by defendants under several federal and New York State civil rights and employment discrimination laws (Title VII, the Civil Rights Act of 1964, the Equal Pay Act, 42 U.S.C. § 1981, and the New York State Human Rights Law), contending that defendant employers created a hostile work environment and had constructively discharged her (Docket No. 2, Compl.). As summarized in these moving papers, "the gravamen of Ms. Black's lawsuit is that Defendants created and permitted a hostile work environment on the basis of race and sex, discriminated against her with respect to wages on the basis of sex, and constructively discharged her," (Docket No. 69, Pl. Atty Decl. ¶ 3). She claims that male coworkers were paid more than she was and were allowed more breaks than she was; that her coworkers made sexual and racial comments. Plaintiff also alleges that the shop rejected African American applicants (although plaintiff is a Caucasian female). She then complains that a coworker allegedly made comments regarding her biracial children. (See Docket No. 2, Compl.; see also Docket No. 32, Order of Nov. 29, 2016, at 2.)

Defendants answered (Docket No. 8), asserting 28 affirmative defenses, about half of them declaring that each of plaintiff's ten causes of action failed to state a claim (id. ¶¶ 154-82; see also id. at pages 17-18 (Reservation of Rights as to named affirmative rights and reserve right to other, unnamed defenses)). This case was referred to the undersigned (Docket No. 9)

3

and the initial Scheduling Order was entered (Docket No. 13) and later was amended (Docket Nos. 22, 27, 33, 40, 47, 66).

*Defendants' Motion to Compel (Docket No. 67)*

While enduring the alleged torts, plaintiff filed for bankruptcy in March 2009 and the bankruptcy was discharged that June. Plaintiff was employed by defendants during that time (later claiming constructive discharge upon her forced resignation in May 2010). (Docket No. 69, Pl. Atty. Decl. ¶ 52.) Defendants now argue that plaintiff's failure to disclose her present civil claims in her bankruptcy could be grounds for dismissal of this case on estoppel grounds (Docket No. 67, Defs. Atty. Affirm. ¶ 7; id., Defs. Memo. at 3 & n.9, citing, for example, Azuike v. BNY Mellon, 962 F. Supp. 2d 591, 598 (S.D.N.Y. 2013)).

This Court ordered plaintiff's deposition, which was conducted on January 23, 2018 (Docket No. 65, Minute Entry of Oct. 26, 2017; Docket No. 67, Defs. Atty. Affirm. ¶ 9, Ex. A, Pl. EBT Tr.). The examination began on 9:35 am (Docket No. 67, Defs. Atty. Affirm., Ex. A, Pl. EBT Tr. at 1), with no stated time for its conclusion mentioned in the transcript. The parties did note the time for a lunch break and some brief recesses during that deposition (id. at 113-14, 147, 215, 281), but there was no running tally of the amount of time expended or left for examining plaintiff. Counsel indicate that each side kept track of the time (see Docket No. 69, Pl. Atty. Decl. ¶ 6; but see id. ¶ 15, Ex. B, Diane Seibert EBT Tr. at 367, 393 (plaintiff indicating that Seibert's examination would be no longer than seven hours and requesting the court reporter tell them the amount of time expended for the record)). This becomes important here because defendants dispute whether they deposed plaintiff for a full seven hours when plaintiff's counsel ended the session (see Docket No. 67, Defs. Memo. at 13).

Defendants there sought plaintiff's testimony whether she told her bankruptcy attorney about the existence of her claims against defendants now in this pending civil action (Docket No. 67, Defs. Memo. at 1). They wish to compel plaintiff's continued deposition and her answers about what she told her attorney (id., Defs. Notice of Motion at 1). Defendants wish to continue her deposition for at least three more hours (id.). They seek to recover costs for transcripts and sanctions against plaintiff's counsel for instructing her not to answer the questions about what she told her attorney and concluding the deposition after seven hours of testimony (id.; id., Defs. Memo. at 15-16), seeking sanctions under Rule 37 as well as 28 U.S.C. § 1927 and this Court's inherent authority to manage its own affairs for plaintiff's counsel's allegedly egregious conduct (id., Defs. Memo. at 16-18).

Defendants argue that plaintiff's bankruptcy (and what she did or did not disclose to the Bankruptcy Court or to bankruptcy counsel) "raises significant defense issues," since claims (including potential and contingent claims) are assets of the bankrupt estate and plaintiff's claims in this case arose during the pendency of the now closed bankruptcy (Docket No. 67, Defs. Atty. Affirm. ¶ 10). Plaintiff as debtor was obliged to disclose all of her assets under oath to the Bankruptcy Court and, omission of these assets potentially defrauded her creditors (id., Ex. C, at page 10 of 41, para. 21). Defendants claim that "given the significance of her omission, defense counsel thus had every right to explore the failure to make disclosure" (id. ¶ 11).

Instead, plaintiff's counsel precluded all questioning about plaintiff's bankruptcy either by instructing plaintiff not to answer attorney-client communications or by speaking objections to follow up questions (id. ¶ 12, Ex. A, Pl. EBT Tr. at 300-06). Counsel then terminated the

entire deposition after about seven hours (id., Ex. A, Pl. EBT Tr. at 306-08). Attached to this Order is an excerpt from the January 23, 2018, transcript of that conclusion (pages 299-308).

Defendants contend that they were cut off from asking the initial questions whether plaintiff had communicated with her bankruptcy counsel, concluding that they are entitled to have at least a "yes or no" answer to that question before plaintiff can invoke any privilege (Docket No. 67, Defs. Memo. at 14), see Gavrity v. City of N.Y., No. 12 Civ. 6004 (KAM) (VMS), 2014 U.S. Dist. LEXIS 132035, at *9 (E.D.N.Y. Sept. 19, 2014) (Scanlon, Mag. J.). They call upon plaintiff to follow Rule 26(b)(5) and this Court's Local Civil Rule 26(d) to provide sufficient information to judge whether privilege is warranted (id.). Defendants may have waived this when plaintiff's counsel asserted attorney-client privilege and stated plaintiff would not testify to her conversations with bankruptcy counsel (Docket No. 67, Defs. Atty. Affirm., Ex. A., Pl. EBT Tr. at 300[9]).

Plaintiff argues that defendants do not need to reopen her deposition, since they seek additional time only to ask about her bankruptcy (Docket No. 69, Pl. Atty. Decl. ¶ 51). As asserted in her cross-motion, plaintiff claims attorney-client privilege.

*Plaintiff's Cross-Motion (Docket No. 69)*

Plaintiff cross-moves for an award of attorneys' fees and costs pursuant to Rules 37(a)(5)(b) and 30(d)(2) against defendants and to compel defendants comply with this Court's Local Civil Rule 26(d) regarding privileges (Docket No. 69, Notice of Motion). In opposing defendants' motion to compel, plaintiff asserts attorney-client privilege to preclude her

---

[9]Lines 5-12.

"Q. [by Mr. Oppenheimer] Did you ever ask – well, tell me –

"MS. GRECO: No conversation with her attorney will she be permitted to answer.

"MR. OPPENHEIMER: That's fine."

from testifying about what she said to her attorney. She argues that under this Court's Local Civil Rule 26(d), she had the right to assert that privilege. (Docket No. 69, Pl. Memo. at 18-20.) Plaintiff argues that, despite her attorney's compliance (at defense insistence) with the seven-hour rule when plaintiff deposed defense witnesses, defense deposition of plaintiff went beyond seven hours and they now move to depose her for additional time (Docket No. 69, Pl. Atty. Decl. ¶¶ 6-23, 44-62; id., Pl. Memo. at 6-18). She argues that defense counsel interfered with plaintiff's depositions of defense witnesses thus defendants are not entitled to additional time to examine plaintiff (Docket No. 69, Pl. Atty. Decl. ¶25).

As for plaintiff's own deposition, she contends that she answered defendants' question (whether she disclosed this action to the Bankruptcy Court) (Docket No. 67, Defs. Atty. Affirm., Ex. A, Black EBT Tr. at 306; Docket No. 69, Pl. Atty. Decl. ¶ 58), therefore, defendants are not entitled to further examination (Docket No. 69, Pl. Atty Decl. ¶ 58). Plaintiff also seeks to recover her attorney's fees as a sanction for defense counsel's conduct, complaint about frequent improper speaking objections, instructions to witnesses not to answer, coaching, intentional delays, interference, and "breaking all bounds of civility with ad hominem attacks on Plaintiff's counsel, including comments on her body language" (id. ¶¶ 24-42, 26).

Plaintiff replies (and later argues in oral argument, see Docket No. 83, Minutes) pointing to defense intransigence in producing discovery in the past (Docket No. 82, Pl. Atty. Decl. ¶¶ 5-12; id., Pl. Reply Memo. at 1-2); this Court will not address this intransigence herein. She concludes that this defense intransigence (leading to the prior discovery motion practice) also denies them good cause to depose plaintiff beyond seven hours (Docket No. 82, Pl. Reply Memo. at 2-3). She contends that defendants' motion was not substantially justified and she is

entitled to recover her reasonable expenses (Docket No. 82, Pl. Atty. Decl. ¶ 13). She renewed her arguments for recovery of sanctions under Rules 30 and 37 (id. ¶¶ 14-17, 23-34).

*Defense Crossing Motion to Strike Plaintiff's Cross-Motion (Docket No. 70)*

Prior to a briefing schedule for plaintiff's cross-motion, defendants moved on April 18, 2018, to strike that motion, arguing that it was an untimely motion to compel under the Amended Scheduling Order (Docket No. 70). Citing the deadline for motions to compel of March 18, 2018, in the last Amended Scheduling Order (Docket No. 66), defendants seek to strike plaintiff's cross-motion of April 17, 2018, because they deem it to be an untimely motion to compel (Docket No. 70, Defs. Atty. Decl. ¶¶ 2, 4-5).

In their reply, defendants renew their contention that plaintiff's cross-motion is untimely under the Scheduling Order and that plaintiff had not sought an extension of the deadlines of that Order to file her motion (Docket No. 81, Def. Reply Memo. 2-5). If viewed as a present motion to extend that Scheduling Order, defendants argue that it is without good cause (id. at 5-7).

## DISCUSSION

I.      Discovery

     A.      Standards

          1.      Discovery

Familiarity with discovery standards announced in the initial Order (Docket No. 27, Aug 16, 2016, Order at 9-10) is presumed.

The duration of a deposition "unless otherwise stipulated [clearly not present here] or ordered by the court, a deposition is limited to one day of 7 hours," Fed. R. Civ. P. 30(d)(1). This is a default rule, "applicable across the run of all sorts of depositions and all sorts of cases,

that applies absent stipulation or court order," <u>Arista Records LLC v. Lime Group LLC</u>, No. 06 Civ. 5936, 2008 U.S. Dist. LEXIS 31269, at *1 (S.D.N.Y. Apr. 15, 2008) (Docket No. 67, Defs. Memo. at 12); <u>Rahman v. Smith & Wollensky Rest. Group</u>, No 06 Civ. 6198, 2009 U.S. Dist. LEXIS 3510 (S.D.N.Y. Jan. 7, 2009) (<u>id.</u>).  Defendants argue that this "default rule" is "a guide," more advisory than a rule (<u>see</u> Docket No. 80, Defs. Reply Memo. at 4).  Seven hours during one day, however, is a rule; absent stipulation or Order (within the Court's broad authority to set the duration, <u>see</u> <u>Arista Records</u>, <u>supra</u>, 2008 U.S. Dist. LEXIS 31269, at *1, or upon application under 30(d)(1) for additional time if needed to fairly examine the deponent), an examining party has only that much time to conduct a deposition.  The time measured is the period of actual deposition of the deponent, excluding time for lunch, other reasonable breaks, <u>e.g.</u>, <u>Scott-Iverson v. Independent Health Ass'n</u>, No. 13CV451, 2016 U.S. Dist. LEXIS 173716, at *4 (W.D.N.Y. Dec. 15, 2016) (Foschio, Mag. J.) (citations omitted); <u>Amendment to Federal Rules of Civil Procedure (2000)</u>, 192 F.R.D. 340, 395.  Leave of this Court also is required if a witness has already been deposed, <u>id.</u>, R. 30(a)(2)(ii).

Rule 26 generally governs the scope of discovery in civil cases:  unless otherwise limited by this Court, the scope of discovery is that a party may obtain

> "any <u>nonprivileged</u> matter that is <u>relevant</u> to any party's claim or defense and <u>proportional</u> to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit,"

<u>id.</u>, Rule 26(b)(1) (emphasis added).

Under Federal Rule 26(b)(5), a party withholding information upon a claim of privilege must expressly make the claim and describe the nature of the communication not produced and

to "do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," Fed. R. Civ. P. 26(b)(5)(A).  This Court's Local Civil Rule 26(d) provides that a party asserting a privilege in objecting to a means of discovery or disclosure and withholds otherwise responsive information must identify the nature of the privilege; the legal authority for that privilege if based upon state law; and the provenance of the privileged information (for oral communication, the names of the persons making the communication, those present during the act, the relationship of the persons, the date and place of the communication, and its general subject matter), W.D.N.Y. Loc. Civ. R. 26(d)(1)(A), (B)(ii).

### 2.    Claims and Bankruptcy Estate

A bankruptcy debtor's tort claims, even those contingent or unliquidated, are claims within the bankruptcy estate that must be disclosed by the debtor, see 2 Collier on Bankruptcy ¶¶ 101.05[1], [6] (16th ed. 2018) (tort claims for future damages based upon continuing conduct is within the scope of the bankruptcy definition of "claim" in 11 U.S.C. § 101); see also 5 Collier on Bankruptcy ¶ 541.07 (estate includes causes of action as of commencement of bankruptcy case).  One commentator notes that "claim" under 11 U.S.C. § 101(5), is defined very broadly "as any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," 2 Collier on Bankruptcy, supra, ¶ 101.05[1].  A claim also may include "a cause of action or right to payment that has not yet accrued or become cognizable," id. & n.12; see McSherry v. TWA, 81 F.3d 739, 740 (8th Cir. 1996) (per curiam) (plaintiff employee's claim against debtor employer for discrimination claim was discharged in bankruptcy despite plaintiff not yet

receiving right to sue letter). A tort claim is a bankruptcy "claim" "where the debtor and injured party" had a pre-petition relationship, see White v. Chance Indus. (In re Chance Indus.), 367 B.R. 689 (Bankr. D. Kan. 2006) (unknown future tort claimant does not have a bankruptcy claim where the debtor and injured party do not have a pre-petition relationship).

In re Hamlett, 304 B.R. 737, 739 (Bankr. M.D.N.C. 2003), one of the debtors was injured in November 2000, claiming that Duke Energy caused the harm. That debtor sent a demand letter to Duke Energy in April 2001; two months later debtors filed their Chapter 7 petition. The schedules for that petition did not include the claims against Duke Energy. Debtors were granted a discharge and the bankruptcy case was closed in September 2001. The debtor then continued to pursue his claim against Duke Energy, but had not yet filed suit. After learning of the bankruptcy, Duke Energy wrote to debtor's counsel arguing that the debtor was estopped by the bankruptcy from bringing the non-disclosed claim against Duke Energy. Debtors reacted by moving to reopen the bankruptcy to list the tort claim. Over Duke Energy's objections, the Bankruptcy Court granted the motion to reopen the case, finding that the tort claim was a property of the estate, that debtors had not abandoned the claim, and that the claim remained property of the estate. 304 B.R. at 739-41. That court also rejected Duke Energy's estoppel arguments, arguing that reopening the case is distinct from acting on any claimed exemption that debtors may raise to the newly disclosed estate asset, id. at 741-42.

3.     Estoppel for Failing to Note Claim

As noted by the court in Azuike, supra, 962 F. Supp. 2d at 598, "Judicial estoppel is often applied 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.' Ibok v. SIAC-Sector Inc., 470 F. App'x

27, 28 (2d Cir. 2012)," (internal quote citation omitted). This doctrine applies "when '1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel,'" Azuike, supra, 962 F. Supp. 2d at 598 (citations and internal quotations omitted). An exception to application of judicial estoppel in these circumstances is "'if the first statement or position at issue resulted from a "good faith mistake or an unintentional error,"'" id. at 599 (quoting Ibok v. SIAC-Sector Inc., No. 05 Civ. 6584, 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011), which quoted in turn Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 n.2 (2d Cir. 1999)); see also Peralta v. Vasquez, 467 F.3d 98, 105 (2d Cir. 2006) (Docket No 69, Pl. Memo. at 14). Application of this exception, in turn, requires an inquiry into the debtor-plaintiff's motive in failing to disclose these claims in bankruptcy, see Azuike, supra, 962 F. Supp. 2d at 599-600. In Azuike, the plaintiff debtor failed to disclose his pending EEOC claim in his prior bankruptcy filing, id. at 594, 598. The court concluded that his assertion of the EEOC claim after discharge in bankruptcy was inconsistent with his representation to the Bankruptcy Court that no such claims existed, id. at 599. The Bankruptcy Court adopted plaintiff's representation and the District Court held that plaintiff's omission was done "in an attempt to obtain unfair advantage, specifically, to prevent the trustee from pursuing his claim for the benefit of his creditors while preserving his ability to recover on the claim himself," id. As for the possibility of the good faith mistake exception, the court found that plaintiff "plainly had a motive to conceal his EEOC claim," id. at 600, rejecting application of that exception, id.

B.       Plaintiff's Attorney-Client Privilege and the Extent of Plaintiff's Deposition

1.       Invocation of Attorney-Client Privilege

Boiling these motions to their essence, the defense wants to question plaintiff whether she disclosed the present claims in her bankruptcy and, if plaintiff is to assert her attorney-client privilege, that she do so properly without interference by plaintiff's counsel.  Plaintiff asserts attorney-client privilege and rules for seven-hour depositions, FRCP 30(d)(1), should preclude her disclosure.  Defendants, however, question whether the privilege was asserted properly and argue that they were denied the ability to pose the threshold question of whether such a privileged conversation occurred prior to plaintiff's counsel's termination of that line of questioning and (ultimately) the seven-hour deposition.  Defense counsel also questions whether seven hours of questioning of plaintiff has elapsed, excluding from their count time when plaintiff reviewed documents (without stating the extent of that time) (cf. Docket No. 67, Defs. Memo. at 12-13) and potentially time when counsel raised and disputed objections.  Defendants conclude that they need at least three more hours to complete examining plaintiff, to cover her claims from 2005-10 as well as the bankruptcy issues (id. at 13).

Rule 26(b)(5) and this Court's Local Civil Rule 26(d) sets forth the information a party claiming that privilege must assert before claiming it.  This information, like a privilege log in other contexts, gives the questioner enough information about the communication to confirm its existence, who were parties to it, who could have overheard it, and other information to identify it and distinguish it.  Both sides invoke these rules for the method to consent the privilege, that is, plaintiff having to set out the predicate information before claiming privilege.  Seemingly,

asking a witness what she told her bankruptcy attorney should provide notice of the invocation of the attorney-client privilege.

Here, defendants asked if plaintiff discussed these claims (see Docket No. 67, Defs. Atty. Affirm. ¶ 14, Ex. A, Pl. EBT Tr. at 300) but privilege was invoked.  What is missing are the who, what, when, and where of such a conversation called for in Federal Rule 26(b)(5) and this Court's Rule 26(d) before the privilege may be asserted.  What is not known here is (1) whether plaintiff had a conversation with her bankruptcy attorney on this point, (2) when that conversation happened, and (3) before whom did it occur.  The fact that the attorney-client communication occurred is not privileged, Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 79 n.12 (S.D.N.Y. 2010) (Cott, Mag. J.) (fact of attorney-client conference call is not privileged, citing Softview Comp. Prods. Corp. v. Haworth, Inc., No. 97 Civ. 8815, 2000 WL 351411, at *14 (S.D.N.Y. Mar. 31, 2000)) (Docket No. 67, Defs. Memo. at 13); see Gavrity, supra, 2014 U.S. Dist. LEXIS 132035, at *9.

Defendants are entitled to ask about these predicates but not (save waiver by plaintiff) to the contents of any privileged communication.  If relevant to a claim or defense, plaintiff should answer whether she had a conversation with bankruptcy counsel about these claims (the "yes or no" question defendants wanted to pose first) and the underlying facts about the conversation if it occurred.

Discovery is limited by the twin aims of relevance and proportionality, Fed. R. Civ. P. 26(b)(1) (see also Docket No. 27, Order of Aug. 16, 2016, at 12-14, Black v. Buffalo Meat Serv., No. 15CV49, 2016 U.S. Dist. LEXIS 108526, at *17-20 (Aug. 16, 2016) (Scott, Mag. J.)).  A fact may be of interest, but the rules do not require an opponent to divulge it in all circumstances.

The amendment of Rule 26(b) to move proportionality to a more prominent position in the rules was to reinforce avoidance of the Advisory Committee once referred to as "over-discovery," to "guard against redundant or disproportionate discovery," 2015 Advisory Committee's Note, citing 1983 Advisory Committee's Note.  In reply, defendants argue that this inquiry is both relevant (because of the effect of her filing bankruptcy on her claims) and proportional (based upon the amount of discovery sought by both sides) (Docket No. 80, Defs. Reply Memo. at 5-6, 7).  During oral argument, defense counsel contended that he was entitled to the proportionate time to depose plaintiff as plaintiff used to depose defendants and defense witnesses (see Docket No. 83, Minutes).

As for proportionality, the scope of other discovery taken to date by one party is not a factor.  Rule 26(b)(1) clearly focuses on the nature of claims and defenses, the amount in controversy, the parties' relative access to information, the needs of the case, and whether the burden or expense of discovery outweighs a likely benefit from disclosure.  The fact that plaintiff (for example) has deposed defendants for x number of hours or deposes more witnesses than defendants have does not mean for proportionality that defendants can depose plaintiff for an equivalent amount of time.  Defendants appear to seek reopening this deposition to address one potential defense, the estoppel effect of plaintiff's failure to list these claims in her bankruptcy.  Plaintiff alleges that she was damaged in the amount of $2 million in lost revenue for each of her ten causes of action (in lost wages, benefits, emotional distress as well as reinstatement, Docket No. 2, Am. Compl. at 29, Wherefore Cl. ¶¶ 1-10).  Thus, the damages sought support additional time for conclusion of plaintiff's deposition.  The privileged nature of the questioning of what plaintiff told her bankruptcy counsel also reaches the burden of further inquiry has relative to its

likely benefit; as discussed above, defendants have plaintiff's admission that she did fail to include these claims on her Petition. The issue is important because unexcused estoppel would end this case. As for parties' relative access to this information, only plaintiff knows whether, and why, she disclosed these claims in her bankruptcy[10]. Thus, proportionality does not justify reopening plaintiff's deposition here.

As for relevance of this inquiry, this bankruptcy inquiry may be relevant to defenses. Defendants argue that they intend to invoke this estoppel in a dispositive motion. During plaintiff's examination and after plaintiff's counsel objected to plaintiff answering questions about her bankruptcy and what she told her bankruptcy counsel, plaintiff reviewed her bankruptcy petition. After an exchange between counsel (see Docket No. 67, Defs. Atty. Affirm., Ex. A, Pl. EBT Tr. at 300-06, also attached to this Order), defense counsel eventually asked

> "Did you ever bring to the bankruptcy court's attention any of your allegations in this case about pay inequity?"
>
> A. No."

(Docket No. 67, Defs. Atty. Affirm., Ex. A, Pl. EBT Tr. at 306). Thus, plaintiff admitted that she did not cite these claims (occurring while her bankruptcy was pending) in her bankruptcy Petition. During oral argument, plaintiff argued that she was unaware of her pay equity claim at that time, stressing now the difficulties in obtaining documents from defense as to their payroll and benefit documents (see Docket No. 83, Minutes; see also Docket Nos. 23, 28, 34 (plaintiff's

---

[10]Possibly her bankruptcy attorney could shed light on whether he was aware of these claims and on the decision to not list them in bankruptcy. But that attorney's testimony also would impinge upon attorney-client communication, as well as possibly attorney work product.

motions to compel production, among other things, payroll and benefit documents), 27, 32, 40, 48 (Orders ordering production of payroll and benefit documents); cf. Docket No. 42 (defense motion to reconsider Docket No. 40)).  The definition of "claim" in the Bankruptcy Code, 11 U.S.C. § 101(5), is broad enough to include causes of action or right to payment not yet accrued or cognizable, 2 Collier on Bankruptcy, supra, ¶ 101.05[1], possibly even claims that the debtor plaintiff was unaware of during the duration of her bankruptcy (such as the equal pay claims).

Plaintiff's admission that she did not include her claims here in her bankruptcy filing appears sufficient for defendants to move in summary judgment to invoke estoppel without extensive questioning of who else she discussed these claims while her bankruptcy was pending (such as the trustee).  Further defense questions whether she conferred with bankruptcy counsel might be cumulative to that admission.

On the other hand, further questioning may provide a basis for plaintiff to assert the exception to this estoppel of good faith mistake or unintentional error for not citing her civil claims in her bankruptcy filings, see Azuike, supra, 962 F. Supp. 2d at 599-600.  With her examination concluded after approximately seven hours, plaintiff's counsel was not afforded the courtesy to question her client under oath after defendants finished to inquire, for example, whether plaintiff intended to omit these claims from her bankruptcy filing or not.  One could argue that, by insisting upon the seven-hour limit, plaintiff waived her opportunity to memorialize her testimony on this point during this deposition.  Given the reopening of her deposition ordered herein, so long as defendants can complete their questioning, plaintiff should be given the opportunity to be examined on this exception.

This Order, of course, does not determine or prejudge whether estoppel based on plaintiff's bankruptcy filing ultimately prevails here (or whether the exception for that estoppel applies).

For the discovery issues raised by the parties under this estoppel, plaintiff **should be questioned (but not extensively)** on this point. Relevance and proportionality do not call for the full scope of inquiry sought by defendants.

2.      Duration for Deposition

The next issue is the duration of a resumed deposition. Time would have to be allowed to fairly examine plaintiff to complete her examination as it was impeded by plaintiff's invocation of privilege and then cessation of the deposition. See also Fed. R. Civ. P. 30(a)(2)(ii) (leave of Court required to depose someone already questioned), 30(d)(1) (absent stipulation or Order, duration of deposition set by rule).

Defendants first claim that plaintiff's deposition did not last seven hours (Docket No. 67, Defs. Memo. at 13), implying that they are entitled to the (unknown) balance of the seven hours to complete their examination, as well as the up to three hours more they seek to complete their inquiry. They complain that there were frequent breaks during the deposition (for plaintiff to review documents, other adjournments) (id.). While counsel for both sides kept track of the duration of the January 23 deposition (see Docket No. 69, Pl. Atty. Decl. ¶ 6), this was not memorialized on the record, as conceded by counsel during oral argument (see also Docket No. 83, Minutes). The transcript does not reflect total elapsed time or the time in which plaintiff answered questions. The parties dispute counting the time when plaintiff reviewed documents (such as her bankruptcy Petition), but no one quantified on the printed record the amount of time

plaintiff expended in reviewing documents. Only some of the breaks were noted on the record. Near the end, counsel debated whether there remained time to conclude plaintiff's deposition (Docket No. 67, Defs. Atty. Affirm., Ex. A, Pl. EBT Tr. at 304-07, also attached to this Order). As is usual practice, the court reporter begins the transcript with the start time for the deposition (id., Pl. EBT Tr. at 1), but no stop time was indicated on that record. As plaintiff noted in oral argument, defense counsel Megan Behas (the defense's time keeper) did not submit an affirmation as to the duration of the examination as she recorded it; defense counsel explained that Ms. Behas is on leave. Plaintiff also did not submit in counsel's declarations or associate's affirmation indicating when seven hours of examination had been completed.

Admittedly, this is a small point. Where defendants argue that more time is needed and while a "stop watch mentality" is not called for (cf. Docket No. 67, Defs. Memo. at 13), this Court needs some idea in the record of how much time arguably remains and whether plaintiff's contention is correct that seven hours had been expended.

Assuming seven hours in fact have been expended, this Court still finds that **additional time is needed to complete this deposition**. Defendants suggest, without specification, that they have other issues arising from plaintiff's numerous claims that they need to inquire to complete her examination (Docket No. 67, Defs. Memo. at 2-3, 2 nn.2-4, 13). They reply that plaintiff raises numerous claims over several years and that time is needed to explore these claims (see Docket No. 80, Defs. Memo. at 5; id., Defs. Atty. Reply Decl. ¶¶ 3-5, 14). Plaintiff counters that the sole issue defendants want to ask her about is what she disclosed (or failed to disclose) in her bankruptcy (Docket No. 69, Pl. Atty Decl. ¶ 51; id., Pl. Memo. at 14). Defense counsel at oral argument stated that he intentionally raised at the end of the day the questions

surrounding plaintiff's bankruptcy filing and these claims, arguing that he wanted to avoid potential for plaintiff's counsel coaching her client if asked sooner. Even if defense inquiry during a resumed deposition is only on the bankruptcy issue, as discussed above, whether plaintiff made a good faith mistake or unintentional error about disclosing these claims in her bankruptcy is worth reopening and extending her deposition.

Therefore, defendants' motion (Docket No. 67) to compel plaintiff's further deposition is **granted in part, denied in part**. Plaintiff's deposition **is resumed** and defendants **may have a second day to complete the examination of plaintiff** to allow a formal establishment of the basis for any attorney-client privilege, but they may not ask about privileged items, such as what plaintiff told her bankruptcy attorney. Both sides may explore the extent plaintiff contemplated disclosing these claims in her bankruptcy but failed to do so. Plaintiff, if she chooses, may also be afforded time during this examination to delve into whether she made a mistake or unintentional error in failing to disclose these claims in her bankruptcy. Plaintiff's cross-motion for (in effect) a protective Order and upholding her attorney-client privilege (Docket No. 69) is **granted in part**.

Defendants' motion to strike (Docket No. 70) plaintiff's cross-motion is **denied**. Her cross-motion does not seek to compel discovery; hence it is not untimely as a motion to compel discovery under the Amended Scheduling Order or as a motion to amend or extend the current Scheduling Order.

Defendants **will not have the up to three hours** they propose to conclude their deposition of plaintiff (or ten hours total). Without delving into privileged material but confirming that a privileged communication occurred, the remaining questions (after up to seven

hours of questioning) could be covered in far less time.  Defendants have not stated what areas in

the ten claims and five years of plaintiff's employment with defendants that remain to be

addressed (or addressed further).  Defendants thus will have up to **one and a half hours** to

complete plaintiff's examination.  Absent other stated topics aside from bankruptcy that either

were not addressed or fully covered, an hour and a half more should be sufficient to examine

plaintiff for relevant material in proportion to the claims and defenses in this case, including time

(if plaintiff wishes) to inquire about exceptions under the estoppel from plaintiff's failure to list

in the bankruptcy.

3.      Manner of Conduct of Renewed Deposition

Both sides here request sanctions against their opponents for how plaintiff's deposition

was conducted.  This Court reviewed the parties' extensive initial submission on these motions

(Docket Nos. 67, 69), which included the full transcript of plaintiff's deposition to date (Docket

No. 67, Defs. Atty. Affirm. Ex. A), the transcripts of the defense witnesses' examinations

(Docket No. 69, Pl. Atty. Decl. Exs. A-G), noting the conduct of counsel in these examinations,

as well as responding and reply papers (Docket Nos 78-82).  Both sides have behaved

egregiously in conducting plaintiff's deposition.  The parties also point to instances in the

depositions of defendants and defense witnesses with plaintiff arguing obstruction and egregious

conduct by defense counsel (e.g., Docket No. 82, Pl. Atty. Decl. ¶¶ 27-28) and then plaintiff later

argued that defendants refused to produce payroll and benefits documents (see Docket No. 83,

Minute), but this Court will focus on the plaintiff's deposition.

Plaintiff's counsel invoked attorney-client privilege without affording defense counsel an

opportunity to confirm the existence of communication that deserves the privilege.  She then

concluded the deposition at what was believed to be seven hours. She also claims that defense counsel impeded plaintiff's examination of defense witnesses (e.g., Docket No. 82, Pl. Atty. Decl. ¶¶ 27-28), but this occurred during some of plaintiff's examinations of defendants and defense witnesses (the conduct of those examinations is not presented before this Court on these pending motions). Defense counsel did insist that plaintiff answer questions about the bankruptcy Petition before she had a chance to read it (Docket No. 67, Defs. Atty. Affirm. Ex. A, Pl. EBT Tr. at 300-01, 302). Both counsel objected frequently, often with speaking objections which sometimes instructed the witness.

With the reopening and continuation of plaintiff's deposition and noting how it has been conducted initially, the manner of its continuation needs consideration as well as its duration. One guidepost should be this Court's Civility Principles. This Court incorporated into its Local Civil Rules Civility Principles adopted in 1998 as the basis for cooperation amount counsel in (among other contexts) discovery contests, W.D.N.Y. Loc. Civ. R. 26(g). Among these Principles, the first preamble states that "A lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms," Standing Order of Sept. 28, 1998, Preamble at 1 (hereinafter "Civility Principles"). The Civility Principles guidelines "are designed to encourage us, judges and lawyers, to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service," id. Among the lawyers' duties to other counsel, attorneys "will not use any form of discovery or discovery scheduling as a means of harassment," id., "Lawyers' Duties to Other Counsel" ¶ 10, at 3, "will not engage in any conduct during a deposition that would not be

22

appropriate in the presence of a judge," id., ¶ 20 at 4, "will not obstruct questioning during a deposition or object to deposition questions unless permitted under applicable law," id., ¶ 21, at 4, "during depositions we will ask only those questions we reasonably believe are necessary, and appropriate, for the prosecution or defense of an action," id., ¶ 22, at 4, "will base our discovery objections on a good faith belief in their merit and will not object solely for the purpose of withholding or delaying the disclosure of relevant information, or for any other improper purpose," id. ¶ 27, at 5.  These duties conclude that "nothing contained in these Guidelines is intended or shall be construed to inhibit vigorous advocacy, including vigorous cross-examination," id. ¶ 31, at 5.

The resumed deposition will be scheduled at a mutually convenient date and this Court or Chambers is available by telephone (if necessary) to resolve any issue arise.  The idea here is to have a non-contentious completion of this deposition.  If trouble does arise, Chambers of the undersigned are a telephone call away.  Parties should note, however, that frequent resort to calling Chambers for resolution of issues arising from this deposition may result in its resumption before this Court.

Next, this Court considers the overall schedule for pretrial proceedings as well as when all discovery should conclude.  Afterwards, this Court will take up the crossing motions for sanctions.

II.     Amended Scheduling Order

After holding deadlines in abeyance pending resolution of the discovery motion (Docket No. 72; cf. Docket No. 66), the deadlines now need to be revisited and restarted.  An extension is warranted just to complete all remaining discovery, including finishing plaintiff's deposition and

conducting a final deposition plaintiff intends to conduct (see Docket No. 69, Pl. Atty. Decl. ¶ 5). Again, the practical effect of consideration of these motions caused a delay. Thus, the Sixth Amended Scheduling Order (Docket No. 66) deadlines are now amended as follows (to run from the entry of this Order):

### SEVENTH AMENDED SCHEDULING ORDER

- Motions to compel discovery now due by **August 3, 2018**;

- Completion of plaintiff's deposition shall occur no later than **August 31, 2018**;

- All discovery now is to be completed by **September 10, 2018**, or seventy-five (75) days from entry of this Order;

- Dispositive motions thus are due by **December 10, 2018**, ninety (90) days after the extended discovery deadline;

- Referral to mediation ends by **January 4, 2019**;

- If no motions are filed, a status report also is due to the undersigned by **January 4, 2019**. A Status Conference will be held on **Wednesday, January 9, 2019, at 10:30 am**, before the undersigned to discuss the readiness of the case for trial before Judge Skretny.

Given the age and contentiousness of this case, this Court intends this to be the **<u>final</u>** Amended Scheduling Order entered and, absent good cause, is loath to extend it further.

III.    Sanctions

Defendants seek sanctions under Federal Rules 30 and 37 and under 28 U.S.C. § 1927, as well as under this Court's inherent disciplinary authority (Docket No. 67, Defs. Memo. at 16-17). Since this conduct arises from depositions, this Court need not invoke its inherent authority or

that under § 1927.  Plaintiff cross-moves for attorneys' fees and recovery of reasonable costs

under Rules 30(d)(2) ad 37(a)(5)(b) (Docket No. 69, Pl. Notice of Cross-Motion).

If a motion to compel is only granted in part, as is done here, this Court "may issue any

protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard,

apportion the reasonable expenses for the motion," Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

The downside of discovery sanctions is that they take on a life of its own, leading to

extensive ancillary litigation as to whether the conduct warrants sanction, the scope of sanction

(including calculating the amount of costs or attorneys' fees incurred due to the sanctionable

conduct), whether the opponent also engaged in similar conduct as tit for tat due to the first

sanctionable conduct.  The quandary arises when both sides act badly.  Ultimately, the case in

chief becomes ignored while the Court addresses the sideshow of attorney conduct.

To avoid further delay while a parallel sanctions litigation occurs, the apportionment of

sanctions for these two motions **will be deferred to the conclusion of the case**.  This will allow

for the case in chief to go forward to its conclusion then, under Rule 37(a)(5)(C), the parties will

have their opportunity to be heard on the issue of apportionment of sanctions.  See DiFrancesco

v. Win-Sum Ski Corp., No. 13CV146, 2017 U.S. Dist. LEXIS 74494, at *9, 11 (W.D.N.Y. May

16, 2017) (Scott, Mag. J.) (deferring decision on awarding discovery motion costs until

conclusion of trial); see also Diversified Control, Inc v. Corning Cable Sys., LLC, No. 05CV277,

2010 U.S. Dist. LEXIS 12734, at *2 (W.D.N.Y. Feb. 12, 2010) (McCarthy, Mag. J.) (deferring

consideration of sanctions fee application during settlement negotiations).  Assuming resolution

of the main action does not also subsume resolution of these discovery sanctions, **fifteen (15)**

**days** after the case is closed, parties will file their respective applications to recover reasonable

motion expenses and attorneys' fees for their motions (Docket Nos. 67, 69). Responses to those applications will be due **ten (10) days** later and the applications will be deemed submitted. This Court then will determine if argument or a status conference on these applications is necessary. For discussion in these applications and responses are (a) whether relief is warranted to that side under Federal Rule 37(a)(5)(A)(i)-(iii) consideration; (b) whether the clients, or counsel, or both, should be held responsible for recovery of these costs and fees; (c) what the amount of the reasonable costs and fees (including applicable billing rates and attorneys' experience to warrant rates claimed) should be awarded. Although now premature to consider since the parties have not have had the opportunity to brief this, <u>cf.</u> Fed. R. Civ. P. 37(a)(5), it is not clear from the current record that the clients called for their attorneys to conduct this deposition in this manner; thus, briefing would also discuss whether counsel or the parties (or both) are ultimately culpable, <u>see</u> Fed. R. Civ. P. 37(a)(5)(A) (holding responsible "the party or attorney advising" the offending conduct or both to pay reasonable costs).

This Court considered other, creative remedies to complete discovery in this aging case without further resort to motion practice, while sanctioning the parties responsible for the misconduct, such as conducting the conclusion of plaintiff's deposition before this Court as a sanction under Rule 30(d)(2) ("the court may impose an appropriate sanction . . . on a person who impedes, delays, or frustrates the fair examination of the deponent"); <u>see</u> <u>Heller v. Wofsey, Certilman, Haft, Lebow & Balin</u>, No. 86 Civ. 9867, 1989 U.S. Dist. LEXIS 7765, at *23 (S.D.N.Y. July 11, 1989) (Lee, Mag.).

Thus, so much of the parties' motions (Docket Nos. 67, 69) seeking sanctions is **deferred** until conclusion of this case, and (assuming no prior resolution) applications due **fifteen (15)**

**days** after the case's conclusion, responses then due **ten (10) days** later, and such applications will be deemed submitted with this Court to determine whether argument or a conference will be in order.

CONCLUSION

For the reasons stated above, defendants' motion (Docket No. 67) to compel is **granted in part, denied in part**; specifically, their motion to compel plaintiff to answer questions on privileged items is **denied**; defendants are **granted continuation of plaintiff's deposition and has up to an hour and a half  (1½ hours) to complete this examination (including delving into the provenance of any attorney-client communication held by plaintiff with her bankruptcy counsel in which she claims privilege), but conducted as ordered herein including conducting the examination by junior counsel for both sides**.  Plaintiff's continued deposition shall be conducted at a date mutually convenient but no later than **August 31, 2018**. Plaintiff's cross-motion (Docket No. 69) to compel compliance with this Court's Local Civil Rule 26(d) (in effect, a motion for a protective Order) is **granted in part**.  Defendants' motion (Docket No. 70) to strike this cross-motion (Docket No. 69) is **denied**.  Apportionment of discovery sanctions sought by both parties (Docket Nos. 67, 69) **is deferred until the conclusion of this action** with application and briefing thereof as discussed above.

Upon the decision of these motions, and to move this case forward, the current Sixth Amended Scheduling Order (Docket No. 66) is amended as stated above.

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      June 29, 2018


Attachment:  except of Docket No. 67, Defs. Atty. Affirm., Ex. A, Plaintiff's Deposition
Transcript, pages 299-308.