UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| DARCY M. BLACK, | |
| Plaintiff, | **DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE** |
| v. | |
| BUFFALO MEAT SERVICE, INC., doing business as BOULEVARD BLACK ANGUS, also known as BLACK ANGUS MEATS, also known as BLACK ANGUS MEATS & SEAFOOD, ROBERT SEIBERT, DIANE SEIBERT, KEEGAN ROBERTS, | 15-cv-00049 |
| Defendants. | |

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District Court for the Western District of New York, Defendants Buffalo Meat Services, Inc. doing business as Boulevard Black Angus, also known as Black Angus Meats, also known as Black Angus Meats & Seafood ("Butcher Shop"), Robert Seibert ("Mr. Seibert"), Diane Seibert ("Ms. Siebert") and Keegan Roberts ("Mr. Roberts") (collectively, "Defendants"), submit this statement of material facts which they contend are not in genuine dispute, in support of their motion for summary judgment seeking dismissal of the Complaint of Plaintiff Darcy M. Black ("Black"):

## Background

1.  Black commenced this action by filing a Summons and Complaint in the Western District of New York on January 15, 2015. *See* docket No. 1 (the "Complaint").

2.  Black is a white woman with two mixed-race children from two different African-American fathers. Complaint, ¶¶ 9-10.

1

18911504.1

3. Black Angus is privately-owned butcher shop (the "Butcher Shop") that sells fresh meat and seafood from its store on Niagara Falls Boulevard in Amherst, New York. The Butcher Shop is owned by Defendants Diane Seibert, Robert Seibert and Keegan Roberts. *See* Complaint, ¶¶ 5-6.

4. Prior to commencing suit in Federal Court, Black submitted several submissions to the Equal Employment Opportunity Commission ("EEOC"). *See* **Exhibits A, B, C.**[1]

5. Black's first submission to the EEOC, which submission was received on June 18, 2010, asserted claims against a single respondent only—the Butcher Shop. There are no claims against Diane Seibert, Robert Seibert or Keegan Roberts asserted. *See* Exhibit A.

6. Black's subsequent submissions to the EEOC, including those submitted through her counsel, all reference one singular "Respondent" or "Employer."  *See* **Exhibit D**, p. 1 ("Attached is Ms. Black's Reply to Respondent's Position Statement."); p. 2 ("I worked for Respondent since May 16, 2004"); p. 10 ("My employer was aware of the hostile environment and continual discrimination and harassment"); *See also* **Exhibit E** ("[T]he undersigned represents Darcy M. Black with regard to her claim against Black Angus Meats, a.k.a. Boulevard Meats").

7. The EEOC conducted a full investigation of claims against the Butcher Shop only, not any of the individually named Defendants. *See* **Exhibit F**, p. 1 ("Charging Party began her employment with Respondent on May 15, 2004 as a front counter employee"); *Id.* (naming "Black Angus Meats" as the sole "Respondent" in the caption of the determination); *Id.* ("Respondent denied that Charging Party was paid at a lower hourly rate because of her gender…").

---

[1] All Exhibits are included in the Appendix filed by Defendants in support of the instant motion.

**Black's Claims**

8.      In her Complaint, Plaintiff alleges ten (10) claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Equal Pay Act, and the New York State Human Rights Law, and $20,000,000.00 in damages. *See* Complaint, ¶¶ 60-152.

9.      Defendants filed their Answer to the Complaint, which denied Plaintiffs' allegations, on April 17, 2015. *See* Docket No. 8 (the "Answer").

10.     The gravamen of Black's claims is that Defendants created a hostile work environment on the basis of race and sex, discriminated against her with respect to wages on the basis of sex, and constructively discharged her. *See* Docket No. 84, p. 3 (Court's Order dated June 29, 2018).

11.     Black alleges that "during"[2] and "[t]hroughout her time as an employee [of the Butcher Shop, she] was subjected to different terms and conditions of employment than similarly situated Caucasian employees and a hostile work environment," (Complaint, ¶ 61), "was subjected to a continuing course of racial discrimination," (*Id*. at ¶ 62), "was required to work in a racially hostile environment," (*Id*. at ¶ 63), "was subjected to different terms and conditions of employment than similarly situated male employees," (*Id*. at ¶ 98), "was subjected to a continuing course of sex discrimination," (*Id*. at ¶ 99), "was required to work in a sexually hostile environment," (*Id*. at ¶ 100), and was treated "adversely because of her sex." (*Id*. at ¶ 111). She alleges that "throughout" her employment she brought "the above-described unlawful conduct to the attention of her supervisors." (*Id*. at ¶ 119). She claims that male co-workers were paid more than she was (*Id.* ¶ 15) and were allowed more breaks than she was (*Id.* at ¶ 24); that

---

[2] *See* Complaint, ¶s 26-27, 37, 39, 92, 129, 135, and 136.

her coworkers made sexual and racial comments (*Id.* at ¶¶ 33-34); and that the Butcher Shop rejected African American applicants (although Black is Caucasian) (*Id.* at ¶ 36).

12. With regard to her equal pay claim, Black alleges that male co-workers Mark Lieble, Jamie LaPress and Sean Round were similarly situated to her, performing the same jobs, and were paid at a higher rate of pay than her. *See* Complaint, ¶¶ 15-19; *See also* **Exhibit G**, p. 198.

13. Black claims that she, Mr. LaPress, and Mr. Leible were "Wrapper-Packer-Cleaners," (Complaint, ¶¶ 16-17), and that Mr. Round was a "Wrapper-Packer-Cleaner/Driver." (Complaint, ¶ 18).

14. Black also compares herself to Patrick Howells, the son of the Butcher Shop's meat cutter, Thomas Howells, asserting that Patrick Howells was an employee of the Butcher Shop who "worked off the books" as a "Wrapper-Packer-Cleaner." *See* Exhibit G, p. 209.

15. Black asserts in her filings with this Court, and similarly asserted in her EEOC filings, that the alleged discriminatory conduct permeated her entire employment, beginning in her year of hire (2005) and continuing through the duration of her five (5) years of employment. *See* Complaint, ¶ 61 ("Throughout her time as an employee of Defendant … Plaintiff … was subjected to different terms and conditions of employment than similarly situated Caucasian employees"); Exhibit G, p. 194:15-23, 195:1-9; Exhibit A, p. 1; Exhibit B p. 1; Exhibit C, p. 1.

16. According to Black's EEOC filing submitted on June 18, 2010: "I have worked at Black Angus for 6 yrs. and 1 1/2 yrs ago I asked for a raise, and all I got was right now is not a good time…[sic]" *See* Exhibit A, p. 7. This alleged denial would have occurred in January 2009. However, in Black's Complaint, she alleges that she requested a salary increase in March 2010, which request was denied. *See* Complaint, ¶ 22.

17.   In her Charge of Discrimination submitted to the EEOC on January 3, 2011, Black asserted that the discrimination began on May 16, 2004. *See* Exhibit C, p. 1**.** However, at her deposition she clarified that the discrimination actually began on May 16, 2005, which was her first day of employment at the Butcher Shop. *See* Exhibit G, p. 189: 14-23.

18.   With regard to the timing of the alleged discrimination, Black specifically testified:

- the "discrimination" related to pay began when her employment began in May 2005. *See* Exhibit G, p. 197:13-20;

- all of the conduct that is the subject of Black's claims began "in the beginning of 2006":

    | | |
    |---|---|
    | Q: | Do you believe that discrimination occurred prior to the end of 2006?  And by discrimination I mean hostile work environment, or your equal pay act claims, all of the stuff that you're claiming in this case that you claim had something to do with gender or race. |
    | A: | Yes. |
    | Q: | When? |
    | A: | When I started performing more duties at work. |
    | Q: | Okay.  Was that sometime in 2005? |
    | A: | When I started in 2006, the beginning. |
    | Q: | Okay.  The beginning of 2006? |
    | A: | Yes. |
    | Q: | Okay. So you think sometime in the beginning of 2006 the discrimination started? |
    | A: | Yeah |

*See* Exhibit G**,** p. 194:15-23, 195:1-9.

18911504.1

- Black began "regularly" observing her time being more closely scrutinized than her male co-workers towards "the end of 2007" and it continued throughout her employment. *Id.* at 217-218; 223: 9-14, 224: 1-4.

- Black witnessed male co-worker Jamie Lapress being late and not being reprimanded at "the end of 2007." *Id.* at 218: 7-9;

- Black became aware in 2007 that she was discriminatorily denied Saturdays off due to her gender and "regularly observ[ed]" this occurring through the balance of her employment. *Id.* at 228: 23, 229:1-6;

- Black observed her male co-worker Sean Round being permitted to come in late on Saturdays and leave early in the Summer and Fall of each year beginning in 2005. *Id.* at 224: 21-23, 225: 1-9;

- Black observed "racial" comments being made to co-workers Raeleen Rush and Regina Rush concerning their African American boyfriends during the period 2005 through 2008. *Id.* at 291-293.

19. Black also asserted in her Charge of Discrimination submitted to the EEOC on January 3, 2011 that: "During the time that I was employed by Respondent, Jamie Lapres [*sic*]… and Shawn [*sic*] Round made racial comments to co-workers about Black individuals." *See* Exhibit C, p. 3. Black asserted that these comments were made "regularly" during her employment. *Id.* ("During my employment, Sean Round would regularly say that he has to deliver to 'Bob's Niggs'"); *see also* Complaint, ¶¶ 40, 41.

20. Black claims that discrimination and harassment at the Butcher Shop impacted her so profoundly that, she left work crying "four days out of five" (*See* Exhibit G, p. 361: 8-16; 369: 1-4) and, by 2006 – only approximately 1 year into her employment – she began

6

undergoing mental health counseling for the alleged discrimination and hostility at the Butcher Shop *Id.* at 180:15-23, 181: 1-8, 184: 3-11; 331: 7-19; *See also* Exhibit D, p. 7 ("During the last four years I worked, I received counseling because of my treatment at Black Angus Meats. I continue to receive counseling").

21. In fact, Black reported to her mental health care provider on August 12, 2009 that she was not being treated well by the men at work, and she was looking around to find a new job. Notes from her visit state:

> She talked quite a bit about her work situation, how the men they are not treating her very well and complaining that she takes breaks, which she is allowed to, although she has been there several years. She is looking around to find a new job and there might be a good prospect through a friend.

*See* Exhibit G, p. 340; *See also* **Exhibit H**.

22. With regard to Black's claims that she was subjected to a sexually hostile work environment, Black alleges that unnamed "male employees made comments of a sexual nature" to unnamed "female employees" *See,* Complaint, ¶ 33. At her deposition, when asked whether she heard any male employees make comments of a sexual nature other than those allegedly made by unspecified males in Paragraph 33 of the Complaint, Black testified: "Not that I can recall." *See* Exhibit G, p 236: 8-12.

## Testimony

23. A total of nine individuals were deposed by Black's attorney throughout the course of this litigation, including the three individually named Defendant-owners: (i) Diane Seibert  (*See* **Exhibit I**); (ii) Robert Seibert (*See* **Exhibit J**); and (iii) Keegan Roberts (*See* **Exhibit K**) ; and six current and/or former employees of the Butcher Shop: (iv) Sean Round (*See* **Exhibit L**); (v) Mark Leible (*See* **Exhibit M**);  (vi) Debbie Negrych (*See* **Exhibit N**); (vii) Jamie

LaPress (*See* **Exhibit O**); (viii) Patrick Howells[3] (*See* **Exhibit P**); and (ix) Raeleen Rush (*See* **Exhibit Q**). Not one of the nine individuals deposed by Black substantiated or corroborated any of the allegations she has made in her Complaint. *See* Exhibit I, p. 128:8-9, 134:9-11; Exhibit J, p. 249:13-18; Exhibit K, p. 194:10-12; Exhibit L, p. 154:8-9, 162:21-23; Exhibit M, p. 183:5-110; Exhibit N, p. 250:17-20; Exhibit O, p. 34:8-9, 38:1-17, 39:6-9, 64: 16-23, 68:16-17; Exhibit P, p. 114:9-12; Exhibit Q, p. 98:18-22, 115:2-22.

24. With regard to Black's allegation that co-worker Jamie LaPress called her children "niggers," Jamie LaPress vehemently denies that he ever made such a comment. *See* Exhibit O, p. 34:8-9, 38:1-17, 39:6-9, 64: 16-23, 68:16-17.

25. Black claims that her co-worker Debbie Nygrych overheard this alleged comment (*See* Exhibit G, p. 296: 8-11), however Ms. Nygrych testified that she never heard Jamie LaPress make such a comment (Exhibit N**,** p. 161-162, 244), and Black never told her about such a comment (*Id.* at 250).

26. Diane Seibert, Robert Seibert, Keegan Roberts, Mark Leible, Sean Round, Patrick Howells, and Raeleen Rush all unequivocally testified that they never heard Jamie LaPress make such a comment or ever heard any racist comments being made at the Butcher Shop.

**Black's Employment at the Butcher Shop**

27. Black worked for the Butcher Shop from May 16, 2005 to May 25, 2010. *See* Complaint, ¶¶ 11, 13.[4] For purposes of the instant suit, Black describes her job at the Butcher Shop as "Wrapper-Packer-Cleaner." *See,* Complaint, ¶ 12. In her 2009 bankruptcy proceeding, she reported herself as a "Laborer." *See* Oppenheimer Aff., Ex. A. And, on a resume prepared

---

[3] As set forth above, Patrick Howells was never employed by the Butcher Shop. *See* Exhibit P, p. 97.
[4] The Parties agree that Black's first day of employment was May 16, 2005, and that the May 16, 2004 date in the EEOC Charge and Complaint is a typo. *See* Exhibit G, p. 189: 14-23

after Black's employment at the Butcher Shop ended, she described her job as "Customer Service / Cashier."  *See* **Exhibit R**; *See also* Exhibit G**,** p. 256: 20-23, 257: 1-12.

28.    The Butcher Shop does not assign formal job titles.  *See* Exhibit I, p. 199: 18-21 ("We don't go by job titles there… we don't use job titles…  We hire employees to do work, to do labor"); p. 200:16-17 ("You guys want job titles and everything. We don't have job titles"). Black was hired to work the front counter where customers placed orders for meat and other products sold at the Butcher Shop. *Id.* at 199: 13-15. Indeed, Black's work at the front counter entailed what would normally be associated with working a counter at a small butcher shop; that is, cashing out customers, taking orders, and occasionally making various prepared foods.

29.    Black's job duties did not involve other tasks that the male employees she identifies as "comparators" performed, including: (i) meat-cutting, which requires specialized skill and knowledge (*See* Exhibit, G**,** p. 142: 12-17)[5]; (ii) making sausage, which also requires special skill and knowledge (*Id.* at 144: 23, 145: 1-3)[6]; making deliveries of food products to customers (*Id.* at 167: 14-19); posting advertising fliers outside of the shop (*Id.* at 168: 5-8); or maintenance outside of the storefront (*Id.* at 138: 1-8).

30.    Sean Round, one of the male co-workers to whom Black compares herself for purposes of her equal pay claim, was hired by the Butcher Shop in 2006 and continued working there on a full-time basis until approximately 2012.  *See* Exhibit L, p. 98. Unlike Black, Sean Round's primary job duty was making deliveries of products to customers outside of the Butcher Shop, driving the shop's truck, and delivering advertising flyers throughout Western New York.

---

[5] *See* Exhibit G,  p. 142: 12-15 ("Q:   Okay. Did you ask Diane, Robert, or Keegan whether you could have the opportunity to learn meat cutting at Black Angus?     A:   No. ").
[6] *Id.* at 144-145 lns. 23, 1-3 ("Q:   Did you ever ask Diane, Robert or Keegan for an opportunity how to make sausage, the entire process?          A:   No.").

9

*Id.* at 124. Accordingly, a significant portion of Mr. Round's time was spent outside of the shop, whereas all of Black's time was spent working inside the shop.

31. Jamie LaPress, another male co-worker to whom Black compares herself for purposes of her equal pay claim, was hired by the Butcher Shop in 2001 and continues to work there full-time through the present day. *See* Exhibit O, p. 42; 291. Mr. LaPress regularly performed the following tasks which Black did not (and/or did not know how to) perform: unloading product off of semi-trucks; making sausage; cutting meat; operating machinery including the grinder, smoker and saw; dismantling equipment for cleaning and sanitizing; and performing outdoor maintenance such as shoveling and landscaping. *Id.* at 148-150; *See also* Exhibit M, p. 113; 117. Mr. LaPress was more tenured than Black, having been an employee of the Butcher Shop for approximately four (4) years at the time Black was hired.

32. Mark Leible, also a male co-worker to whom Black compares herself, was hired by the Butcher Shop in 2001 and continues to work at the Butcher Shop full-time through the present day. Unlike Black, Mr. Leible regularly performed the skilled task of making sausage. *See* Exhibit M, p. 37-38. Mr. Lieble also performed the skilled task of cutting meat, which Black also did not (nor knew how to) do. *Id.* at 50-51; 117. Mr. Lieble was a more tenured employee, having been employed by the Butcher Shop for approximately four (4) years at the time Black was hired.

33. Patrick Howells, to whom Black also compares herself, was never employed by the Butcher Shop. *See* Exhibit P, p. 97. He sometimes visited the Butcher Shop to bring his father Thomas Howells lunch and, during one deer season, had his father teach him how to cut deer. *Id.* at 62-63.

34. Black was hired at the starting pay rate of $7.50 per hour and, after receiving annual raises, was making $10.00 per hour at the time she resigned. *See* Complaint, ¶ 12; *See also* Exhibit A, p. 1.

35. Butcher Shop employees are trained on the job and are held to commonsense standards of conduct; principally, treat others with respect and as you would like to be treated. *See* Exhibit I, p. 86: 4-9.

36. Black received formalized training on employment discrimination, harassment and equal pay issues, specifically, at several jobs she held with larger employers, including K-mart, Laidlaw, Marriott, NCO Financial and Chartwells prior to her employment at the Butcher Shop. *See* Exhibit G, p. 32:23, 33: 1-8; p. 35: 20-23, 36: 1-23. Black even received written materials concerning employment discrimination and harassment from her prior employers. *Id.* at 38-41.

37. Ms. Black tendered a letter of resignation from Black Angus on May 19, 2010 *See* Exhibit G, p. 297:23, 298: 1-5; *See also* **Exhibit S**. She left the resignation letter on Diane Seibert's desk. *See* Exhibit G, p. 298: 8-13.

### Black's 2009 Bankruptcy

38. Approximately four years into her employment at the Butcher Shop, on March 3, 2009, Plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy with the United States Bankruptcy Court for the Western District of New York, Case No. 1-09-10778-MJK. *See* Oppenheimer Aff., ¶ 3, Ex. A.

39. Black was represented by experienced bankruptcy counsel, David Butterini. *Id.* She met with Mr. Butterini on three separate occasions. *See* Exhibit G,. p. 343:23, 344: 1-4. At their first meeting, Mr. Butterini gave Black a pamphlet of papers to take home and complete. *Id.*

11

at 345: 7-9. Black completed filling out the pamphlet of papers and returned them to Mr. Butterini. *Id.* at 349: 20-21. Black claims to have understood everything in this pamphlet and further testified that she would have asked Mr. Butterini if she did not understand something. *Id.* at 35: 1-6.

40. In the schedule of assets accompanying her bankruptcy petition, Black failed to disclose any claims against defendants arising out of her employment. Instead, she represented to the bankruptcy court that she had no such claims. Schedule B to Black's bankruptcy petition expressly compelled Black to disclose all "contingent and unliquidated claims of every nature." *See* Oppenheimer Aff., ¶ 3 Exhibit A. Black placed an "X" in the column labeled "None," and swore under penalty of perjury that the information contained in the summary and schedules were true and correct to the best of her knowledge, information and belief. *Id.*[7]

41. Not only did Black represent to the bankruptcy court that she had no claims when initially filed her bankruptcy petition, and she continued that representation for approximately six months, through the closing of her bankruptcy case on August 25, 2009, never amending her schedules to include any potential claims against the Butcher Shop or individual defendants. *Id.* at Exhibit C.

42. Based on Black's filing, including the representation that she had no claims against anyone, the bankruptcy court granted Black a full discharge of her debts on June 11, 2009 and closed the case on August 25, 2009. *Id.* at ¶ 7, Ex. C.

---

[7] Plaintiff's Bankruptcy Petition also included the notice required by Section 342(b) of the Bankruptcy Code , which warns: "A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both." *See* Oppenheimer A, ¶ 5, Ex. A, p. 37.

43. In light of the foregoing facts set forth herein and for the reasons set forth in the accompanying Memorandum of Law, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety as a matter of law.

**Dated:** August 20, 2019

        **BARCLAY DAMON LLP**

        *s/* Randolph C. Oppenheimer
        Randolph C. Oppenheimer, Esq.
        Sarah A. O'Brien, Esq.

        The Avant Building – Suite 1200
        200 Delaware Avenue
        Buffalo, New York 14202-2150
        716-856-5500 – Telephone
        716-856-5510 – Facsimile
        roppenheimer@barclaydamon.com
        sobrien@barclaydamon.com

        *Attorneys for Defendants*