**EX. 70**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARCY M. BLACK

        Plaintiff,

 v.

BUFFALO MEAT SERVICE, INC., doing business as
BOULEVARD BLACK ANGUS, also known as
BLACK ANGUS MEATS, also known as
BLACK ANGUS MEATS & SEAFOOD,
ROBERT SEIBERT,
DIANE SEIBERT,
KEEGAN ROBERTS,

        Defendants.

**DECLARATION**

15-CV-00049 WMS-HBS

---

    Josephine A. Greco, Esq., declares under the penalty of perjury under the laws of the United States of America that the following is true and correct:

    1.  I am an attorney at law with the law firm of Greco Trapp, PLLC, attorneys for Plaintiff, and am duly licensed to practice in the State of New York and before this Court. I am fully familiar with the factual and procedural history of this action, and this Declaration is based upon that knowledge.

    2.  I make this Declaration in opposition to Defendants' Motion for an Order: (1) compelling a deposition of Ms. Black in excess of seven hours; (2) compelling Ms. Black to waive attorney-client privilege; (3) for sanctions; and (4) for attorneys' fees and costs.

    I also make this Declaration in support of Plaintiff's Cross-Motion for an Order: (1) awarding attorneys' fees and costs (*see* FED. R. CIV. P. 37(a)(5)(b), 30(d)(2)) and (2) compelling Defendants to comply with W.D.N.Y. R. CIV. P. 26(d).

1

3. Plaintiff, Darcy M. Black (hereinafter Ms. Black), brought this action against Defendants alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Equal Pay Act, 29 U.S.C. § 206 *et seq.*; the New York State Human Rights Law, Executive Law Section 290, *et seq.*; and 42 U.S.C. § 1981. The gravamen of Ms. Black's lawsuit is that Defendants created and permitted a hostile work environment on the basis of race and sex, discriminated against her on the basis of race and sex, discriminated against her with respect to wages on the basis of sex, and constructively discharged her. *See* Dkt. 1 (Complaint).

4. The parties have conducted substantially all depositions in this matter. The first deposition was on November 20, 2017, and the most recent deposition was on February 19, 2018. The depositions in chronological order have been:

(a) Sean Round, taken on November 20, 2017. Mr. Round's deposition transcript is attached as **Exhibit A** (hereinafter Round Dep.).

(b) Diane Seibert, taken on January 4, 2018. Ms. Seibert's deposition transcript (with Index) is attached as **Exhibit B** (hereinafter Diane Dep.).

(c) Jamie LaPress, taken January 5, 2018. Mr. LaPress's deposition transcript is attached as **Exhibit C** (hereinafter LaPress Dep.).

(d) Deborah Negrych, taken on January 8, 2018. Ms. Negrych's deposition transcript is attached as **Exhibit D** (hereinafter Negrych Dep.).

(e) Robert Seibert, taken January 10, 2018. Mr. Seibert's deposition transcript (with Index) is attached as **Exhibit E** (hereinafter Robert Dep.).

(f) Keegan Roberts, taken January 12, 2018. Mr. Roberts's deposition transcript (with Index) is attached as **Exhibit F** (hereinafter Keegan Dep.)

(g) Mark Leible, taken on January 22, 2018. Mr. Leible's deposition transcript is attached as **Exhibit G** (hereinafter Leible Dep.).

(h) Darcy Black, taken on January 23, 2018. Ms. Black's deposition transcript is attached as Exhibit A to Mr. Oppenheimer's moving affirmation and will be hereinafter referred to as Black Dep.

2

    (i)  Thomas Howells, taken February 9, 2018. Plaintiff does not attach the transcript of Mr. Howells's deposition, since Megan Bahas, Esq., not Randy Oppenheimer, Esq., defended that deposition, and Ms. Bahas's demeanor and conduct is not the subject of this motion.

    (j)  Patrick Howells, taken on February 19, 2018. Plaintiff does not attach the transcript of Mr. Howells's deposition, since Megan Bahas, Esq., not Randy Oppenheimer, Esq., defended that deposition, and Ms. Bahas's demeanor and conduct is not the subject of this motion.

  5.  Plaintiff is entitled to and intends to conduct one additional deposition before the close of discovery.

### Each of Plaintiff's counsel's depositions complied with the 7-hour deposition rule.

  6.  During each of Plaintiff's counsel's depositions of party and nonparty witnesses, Defendants' counsel kept strict and meticulous time. Defendants did so as to ensure that Plaintiff's counsel's depositions were limited to seven hours, in compliance with the applicable rule. Counsel had regular and frequent off-the-record discussions during these depositions concerning what portion of the 7-hour limit remained.

  7.  None of these depositions exceeded seven hours. When the 7-hour period expired, Plaintiff's counsel respectfully advised that she had no further questions. She made no attempt to and did not insist on posing questions after the expiration of seven hours. *See e.g.* Diane Dep. at 407; Robert Dep. at 328; Keegan Dep. at 345.

  8.  In fact, of all of the depositions that Plaintiff's counsel conducted, only three ran over five-and-a-half hours. Those three were the depositions of the individually named natural person defendants: Robert Seibert; Diane Seibert; and Keegan Roberts.

  9.  Each of these three defendants held ownership interests in BUFFALO MEAT SERVICE, INC. (hereinafter BAM) and were custodians of nearly 4,000 pages of relevant and material payroll, benefit, and other records disclosed during discovery.

3

10. Nevertheless, Plaintiff's counsel completed each of these depositions within seven hours; Defendants certainly would not have allowed Plaintiff's counsel's depositions to exceed seven hours.

11. During all depositions and specifically during the depositions of Robert Seibert; Diane Seibert; and Keegan Roberts, Defendants demanded strict compliance with the 7-hour deposition rule. Defendants timed each deposition, and the parties engaged in frequent off-the-record discussions regarding how much time remained.

(a) At the deposition of Robert Seibert, Defendants had two lawyers present: Randy Oppenheimer, Esq., and Megan Bahas, Esq. *See* Robert Dep. at 4. During that deposition, Ms. Bahas kept time, and either she or Mr. Oppenheimer would advise Plaintiff's counsel as to how much time remained.

(b) At the deposition of Diane Seibert, Defendants had two lawyers present: Randy Oppenheimer, Esq., and Megan Bahas, Esq. *See* Diane Dep. at 26. During that deposition, Ms. Bahas kept time, and either she or Mr. Oppenheimer would advise Plaintiff's counsel as to how much time remained.

(c) At the deposition of Keegan Roberts, Defendants had two lawyers present: Randy Oppenheimer, Esq., and Rosemary Enright, Esq. *See* Keegan Dep. at 7. During that deposition, Ms. Enright or Mr. Oppenheimer kept time and either she or Mr. Oppenheimer would advise Plaintiff's counsel as to how much time remained.

12. During these depositions, Plaintiff's counsel also had either an associate attorney or a legal assistant present. Either the associate attorney or the legal assistant would also be keeping time on the depositions. When Defendants advised Plaintiff's counsel that a certain

4

amount of time remained, Plaintiff's counsel would check that time against the time that her staff had recorded.

13. In addition to significant time-related off-the-record discussions, the deposition transcripts of Robert Seibert; Diane Seibert; and Keegan Roberts demonstrate that Defendants demanded strict compliance with the 7-hour deposition rule.

14. For example, during the deposition of Keegan Roberts, when Defendants' counsel delayed the examination of Mr. Roberts by insisting that Mr. Roberts read an entire document, Defendants' counsel stated: "If you were worried about clock time on his minute or two to look at the document, I'll take it off the clock." Keegan Dep. at 31. In fact, Defendants' counsel ended Mr. Roberts's deposition by informing Plaintiff's counsel that the 7-hour time limit had expired. *See* Keegan Dep. at 345. In advising Plaintiff's counsel that the time was 6:10 p.m., Defendants' counsel was advising Plaintiff's counsel that the deposition was over under the 7-hour rule. The witness answered the pending question, and the deposition ended. *See* Keegan Dep. at 345.

15. The transcript of Diane Seibert's deposition also demonstrates that Defendants kept meticulous time on Plaintiff's counsel's depositions. For example, Defendants' counsel requested confirmation that the deposition was being timed. *See* Diane Dep. at 378. Plaintiff's counsel confirmed that she intended to, in accordance with the 7-hour rule, limit Ms. Seibert's deposition to seven hours. *See* Diane Dep. at 367. Near the end of the deposition, Defendants' counsel specifically requested that the court reporter indicate how much time the deposition had been on the record. *See* Diane Dep at. 393.

16. Plaintiff's counsel even complied with the 7-hour deposition rule at Robert Seibert's deposition, despite it coming to light during that deposition that Defendants were in

5

possession of health insurance documents previously demanded but not disclosed. *See* Robert Dep. at 203-208.

17. Specifically, Plaintiff had requested this information and documentation throughout this litigation and had specifically sought it in a motion to compel. *See* Dkt. 34-1 ¶ 13 (concerning all records reflecting benefits paid and contributions). This Court and the Hon. William M. Skretny had directed that Defendants produce all records pertaining to employee compensation and benefits, which would have necessarily included BAM's contributions to employee health insurance. *See* Dkts. 40, 61. In response, however, Defendants had represented that such documents did not exist or were not available. *See* Dkt. 36-2 ¶ 45; 34-2, Ex. D ¶ 4 (each stating that all records had been provided). Plaintiff's counsel made clear on the record during Mr. Seibert's deposition that Plaintiff had sought these records in discovery and on motion. *See* Robert Dep. at 203-208.

18. Mr. Seibert then nonchalantly testified that these records and documents did, in fact, exist and could have been produced.

19. In light of this development, Defendants' counsel noted that he would not hold Plaintiff's counsel to the 7-hour deposition rule, which confirms that counsel had enforced that rule during prior depositions. *See* Robert Dep. at 328. Clearly, Defendants' counsel was concerned about the failure to disclose issue and explicitly acknowledged Defendants' and his firm's failure to produce the health insurance records and documents that Mr. Seibert's testimony had confirmed the existence of.

20. As a result of Defendants' and Defendants' counsel's failure to produce readily available, relevant, and material records going to employee benefits and compensation, Plaintiff's counsel was deprived of her right to ask Robert Seibert during his deposition about BAM's

6

employee health insurance. Given that Robert Seibert's deposition occurred after Diane Seibert's, Plaintiff's counsel was deprived of her right to ask Diane Seibert about BAM's employee health insurance contributions. Even worse, rather than making every effort to disclose these documents in a timely manner immediately after Mr. Seibert's January 10, 2018 deposition, Defendants provided these documents to Plaintiff **via regular mail only** in a letter dated January 17, 2018. In doing so, Defendants also deprived Plaintiff's counsel of her right to ask Keegan Roberts about BAM's employee health insurance contributions during his January 12, 2018 deposition. Attached as **Exhibit H** is Defendants' enclosure letter with respect to these records.

21. Even in light of this development and Defendants' counsel's offer, Plaintiff's counsel limited her deposition of Mr. Seibert to seven hours.

22. Thus, Defendants' allegation that "several" of Plaintiff's depositions exceeded seven hours is a patent misrepresentation. *See* Oppenheimer Aff. ¶ 12 (making this allegation); *see also id.* ¶ 8 (insinuating this allegation). Notably, Defendants do not, because they cannot, actually specify the deposition(s) that they allege exceeded seven hours. *See* Oppenheimer Aff. ¶ 12.

23. Fairness demands that Defendants' deposition of Ms. Black be limited to seven hours, given Defendants' rigorous enforcement of the 7-hour deposition rule during all other depositions. When Plaintiff's counsel's depositions reached the 7-hour point, Plaintiff's counsel respectfully ended the depositions and did not attempt to or insist on posing questions after the 7-hour limit had expired.

7

### Defendants' counsel's conduct during depositions violated applicable rules, was unprofessional, was improper, and exceeded all bounds of civility and decency.

24. Plaintiff's counsel adhered to the 7-hour rule in all depositions despite Defendants' counsel's constant interference and unprofessional conduct.

25. Defendants' counsel's interference was aimed to destroy Plaintiff's depositions. In the 330-page transcript of Robert Seibert's deposition, Mr. Oppenheimer's name appears 445 times. *See* Robert Dep. at Index 20. In the 408-page transcript of Diane Seibert's deposition, Mr. Oppenheimer's name appears 488 times. *See* Diane Dep. at Index 29. And in the 347-page transcript of Keegan Roberts's deposition, Mr. Oppenheimer's name appears 543 times. *See* Keegan Dep. at Index 21.

26. Defendants' counsel engaged in a litany of improper conduct, including: making consistent improper speaking objections; improperly instructing witnesses to not answer; coaching; intentionally delaying and interfering; and breaking all bounds of civility with *ad hominem* attacks on Plaintiff's counsel, including comments on her body language.

27. With respect to the litany of improper objections, Defendants' counsel made numerous speaking objections at each of Plaintiff's counsel's depositions, with the most common objections being asked and answered, compound question, and argumentative. *See e.g.* Keegan Dep. at 19, 65, 126, 201, 202, 207, 234, 299, 301, 317, 319, 329; Diane Dep. at 204, 328; Robert Dep. at 20, 121-122, 159, 199, ; LaPress Dep. at 15, 23, 39, 111, 145, 243, 359, 260; Round Dep. at 149; Negrych Dep. at 209. These cited references are only a small portion of Defendants' counsel's improper speaking objections.

28. When Plaintiff's counsel requested that Defendants' counsel limit his objections as to form in accordance with the rules, Defendants' counsel was rude and condescending with

8

comments like "[t]hank you, professor" (Keegan Dep. at 239) or "Jesus Christ" (Negrych Dep. at 209).

29. During the deposition of Jamie LaPress, Defendants' counsel improperly instructed Mr. LaPress to not answer questions about his (LaPress's) marijuana use. *See* LaPress Dep. at 36-37. Defendants' counsel did not state the ground on which he made this instruction to not answer. *See id*. And Mr. LaPress made no invocation of or reference to a privilege to not testify. *See id*. Instead, Defendants' counsel stated only that Mr. LaPress had "certain rights" concerning whether he had "violated the law." *Id*.

30. This improper instruction to not answer is especially prejudicial, given that Mr. LaPress is a key witness who called Ms. Black's children niggers; who arrived late to work at BAM over 70 times while still remaining employed; and whose credibility is relevant to many of the core issues in this matter. *See* Black Dep. at 295; LaPress Dep. at 98-99.

31. During the depositions of Robert Seibert and Diane Seibert, Defendants' counsel also invoked attorney-client privilege on behalf of those witnesses without providing a full and clear explanation of the nature of the communication that he was asserting privilege with respect to. *See* Robert Dep. at 204-205; Diane Dep. at 160.

32. During each deposition at which Mr. Oppenheimer appeared, he constantly coached each witness by consistently instructing the witnesses to answer only if they remembered, if they knew, or if they could answer without guessing; typically, Defendants' counsel would perform this coaching by also reminding the witnesses that they were under oath. *See e.g.* Keegan Dep. at 47, 172; Diane Dep. at 92; Robert Dept. at 33, 34, 52, 129, 260; LaPress Dep. at 202, 226; Negrych Dep. at 26, 48; Leible Dep. at 35-36. These cited references are only a small portion of Defendants' counsel's improper coaching.

9

33. Defendants' counsel also made every effort to delay and impede Plaintiff's counsel's depositions with the goal of having the 7-hour deposition time limit expire before Plaintiff's counsel had an opportunity to ask all relevant questions.

34. For example, Defendants' counsel began to significantly delay the deposition of Ms. Seibert when Plaintiff's counsel began asking questions about BAM's letter response to Ms. Black's EEOC charge. *See* Diane Dep. at 182-187.

35. Defendants submitted this letter response, which was prepared and executed by both Robert and Diane Seibert, to the EEOC prior to being represented by Mr. Oppenheimer and his law firm. A true and correct copy of the letter response, which was signed by both Diane Seibert and Robert Seibert, is attached as **Exhibit I**.

36. Notably, this letter response contains particularly relevant statements harmful to Defendants' position, such as: BAM would "discard females as a rule" when reviewing applications for certain positions (**Exhibit I** at 4); that BAM felt that Ms. Black felt a connection to two other white female employees who were dating black men "because her children were biracial" (*id*.); that BAM refers to black customers as "inner city customers" (*id*. at 5); and that BAM deemed that Ms. Black "was easy to feel sorry for" because she was "a single mother with two biracial children" (*id*.).

37. Understanding that Plaintiff's counsel's questions based on this document would likely be significantly unfavorable, Defendants' counsel engaged in delaying Ms. Seibert's deposition by insisting that Ms. Seibert read the entire document before answering any questions. *See* Diane Dep. at 187. Plaintiff's counsel, however, had made clear that her questions would be limited to specific aspects of the document. *See* Diane Dep. at 187. Moreover, Ms. Seibert had

10

actually prepared and executed this document; it was not the first time she saw or became aware of it. *See* Diane Dep. at 187.

> MR. OPPENHEIMER: I want you to read this entire document.
> MS. GRECO: I'm not asking anything else.
> MR. OPPENHEIMER: I want her to read this entire document.
> MS. GRECO: I asked her when she did it, is it truthful and honest. I didn't ask her to read it or ask her anything about it.
> MR. OPPENHEIMER: I'm not letting you move forward.
> MS. GRECO: Let's call the judge.
> MR. OPPENHEIMER: Go ahead.
> MS. GRECO: I showed her a document she submitted to a federal agency. She said she signed it, said she prepared it. That's it.
> MR. OPPENHEIMER: I want her to read the document. Then call the judge if you are going to prevent her from reading the document.
> MS. GRECO: I'm done with my questions on this.
> MR. OPPENHEIMER: You've shown her a document. She's going to read the document.
> MS. GRECO: No, she is not.
> . . .
> MR. OPPENHEIMER: No. You will read the document now.
> MS. GRECO: She will not. She is not going to waste my time reading a document she wrote and already submitted and everybody has had for six years.

Diane Dep. at 186-187.

38. Moreover and most importantly, Defendants' counsel's conduct frequently exceeded all abounds of civility and decency. He yelled (*see* Keegan Dep. at 203); he questioned Plaintiff's counsel's ethics (*see* Keegan Dep. at 206); and he was childishly mean-spirited (*see e.g.* Diane Dep. at 376 ("You are wasting all of our time.")); he told Plaintiff's counsel to "shut [her] mouth" (Black Dep. at 305). He also made frequent and uncalled for comments about Plaintiff's counsel's facial expressions. *See e.g.* Keegan Dep. at 50, 112-113; LaPress Dep. at 54-55; Robert Dep. at 35. Even on Defendants' submissions on their instant motion, in calling Plaintiff's counsel a lair (*see* Defendants' MOL at 11), demonstrate the unprofessional tone and demeanor that Defendants have consistently used throughout this matter.

11

39. In fact, the undersigned does not say lightly that she had never been in a deposition with a more disruptive, disrespectful, or condescending attorney.

41. Given Defendants' counsel's uncivil and unprofessional conduct at other depositions, it is unsurprising that Defendants' instant motion attempts to minimize this conduct by focusing their argument on Plaintiff's counsel's conduct only after the issue of Ms. Black's 2009 bankruptcy was raised.

42. Defendants' counsel's conduct during these depositions goes to further demonstrate that Defendants are not entitled to conduct a deposition of Ms. Black in excess of seven hours.

### Defendants conducted a full and complete 7-hour deposition of Ms. Black, and additional time is not warranted.

44. Defendants conducted a full and complete 7-hour deposition of Ms. Black. During Ms. Black's deposition, an associate attorney from Plaintiff's counsel's office, Daniel Palermo, Esq., kept deposition time. In doing so, he did not count any lunch or break time against the seven hours.

45. Ms. Black's deposition in this matter had been delayed due to her back surgeries. Both the Court and Defendants' counsel were aware of the reason for this delay, and the Court had noted that, although Defendants' counsel sought Ms. Black's deposition on January 23, 2018, Ms. Black's appearance would ultimately depend on her availability. *See* Dkt. 65. Ultimately, Ms. Black did appear on January 23, 2018, as Defendants had requested. *See* Black Dep.

46. Prior to ending Ms. Black's deposition, Plaintiff's counsel consulted with Mr. Palermo to verify that Defendants' deposition of Ms. Black had run a full seven hours. Mr. Palermo confirmed that Ms. Black's deposition had exceeded seven hours.

47. By the time that Defendants' counsel first asked Ms. Black about her 2009 bankruptcy, Defendants' counsel had questioned Ms. Black extensively concerning her entire

12

tenure of employment with BAM, including each aspect of her claims of gender discrimination, race discrimination, wage discrimination, and hostile work environment. *See generally* Black Dep. The transcript of Ms. Black's deposition demonstrates that, during Ms. Black's 7-hour deposition, Defendants' counsel had completed his questioning of Ms. Black related to her employment with BAM and her claims in the instant matter. *See e.g.* Black Dep. at 299 (changing topic after discussing the end of Ms. Black's employment with BAM).

48. Thus, by the time that Defendants' counsel had reached Ms. Black's 2009 bankruptcy, Defendants' counsel had exhausted all relevant areas of inquiry. Moreover, Defendants' counsel was in control of the structure, nature, and pacing of Ms. Black's deposition. It was incumbent on Defendants to explore all allegedly relevant areas of inquiry in compliance with the 7-hour deposition rule.

49. Given that Defendants' counsel controlled the structure of and topics addressed during Ms. Black's deposition, Defendants should not be heard to complain about not having sufficient time, especially given that the examination of Ms. Black was not document intensive. Defendants' questioning of Ms. Black with respect to documents was limited to her: BAM employment application (Black Dep. at 13); documents related to her EEOC charge (*see id*. at 178, 188, 193); her federal court complaint (*see id*. at 215); her other employment (*see id*. at 254); and her letter of resignation connected to her constructive discharge (*see id*. at 298). Given that the examination of Ms. Black was not document-intensive, there was not reason why Defendants' counsel could not complete Ms. Black's deposition in compliance with the 7-hour deposition rule.

50. In contrast and as noted above, Plaintiff's counsel completed the depositions of the three individually named natural person defendants, who were custodians of nearly 4,000 pages of records, in compliance with the 7-hour deposition rule.

13

51. Defendants' submissions on their instant motion indicate only that they seek to question Ms. Black about her 2009 bankruptcy. Defendants' submissions do not identify any additional areas of inquiry. Ms. Black's 2009 bankruptcy, however, is wholly irrelevant to this matter. Given that Defendants' identify only one area of inquiry to explore during any further deposition of Ms. Black, it is certainly unclear as to why Defendants' instant motion seeks an additional three hours.

52. Ms. Black filed a Chapter 7 bankruptcy on March 3, 2009. *See* Oppenheimer Aff., Ex. C. The bankruptcy was discharged on June 11, 2009. *See* Oppenheimer Aff.., Ex. D. Ms. Black remained employed at BAM throughout this bankruptcy proceeding and for about a year after, until she was constructively discharged on or about May 25, 2010. *See* Black Dep. at 60.

53. Thus, Ms. Black did not and had no reason to disclose her treatment at BAM in the context of her early 2009 bankruptcy proceedings. Her bankruptcy was filed and discharged before she had any good faith basis to know that she had any claim(s) against BAM and before the proverbial straw that broke the camel's back, i.e., BAM's utter failure to address the event in which Jamie LaPress called Ms. Black's children "niggers" and suggested that they knew how to pick locks. *See* Black Dep. at 295-298. Ms. Black did not file her charge of discrimination until December 16, 2010; a copy of Ms. Black's EEOC charge is attached as **Exhibit J**. Prior to the discharge of her 2009 bankruptcy, Ms. Black had never consulted with an attorney or filed a Charge of Discrimination.

54. Moreover, Ms. Black was represented by David Butterini, Esq., with respect to her 2009 bankruptcy. *See* Oppenheimer Aff., Ex. C. Under the bankruptcy code, Mr. Butterini had an obligation to explain each disclosure schedule and to make inquiries as to verify that the schedules were correct. Mr. Butterini provided certification that he made this inquiry and that the

14

schedules were correct on March 3, 2009. *See id.* at 3. Ms. Black testified that she was truthful with Mr. Butterini. *See* Black Dep. at 300.

55. Given that Ms. Black retained a bankruptcy attorney and that she was honest with that attorney, any alleged errors on Ms. Black's schedules cannot be attributed to Ms. Black. Ms. Black has only a high school education. *See* Black Dep. at 11-12. As a lay person with limited education, Ms. Black cannot be expected to understand the complex language on the bankruptcy paperwork concerning any "[o]ther contingent and unliquidated claims of every nature." *See* Oppenheimer Aff., Ex. C at 10. The complicated nature of the proceedings and these documents is precisely the reason that Ms. Black, an unsophisticated lay person, needed an attorney to represent her with respect to her 2009 bankruptcy.

56. Insofar as Defendants' counsel sought Ms. Black's testimony with respect to the content of her conversations with Mr. Butterini, Plaintiff's counsel would not allow Ms. Black's response on the basis of attorney-client privilege. *See* Black Dep. at 300. Notably, Defendants' counsel's questions were not concerning whether Ms. Black spoke with Mr. Butterini, but instead sought testimony as to what Ms. Black told Mr. Butterini. *See* Black Dep. at 300.

57. Regardless, by the time Defendants' counsel asked the initial question concerning Ms. Black's 2009 bankruptcy, the 7-hour deposition time had practically expired. If Defendants deemed Ms. Black's 2009 bankruptcy an issue central to their defense, it was incumbent on them to ensure they had sufficient time remaining to explore that issue.

58. Moreover and despite Defendants' exasperation, however, Defendants concede (Oppenheimer Decl. ¶ 26) **that they actually received an answer to the question** central to this line of inquiry, i.e., whether Ms. Black disclosed her treatment at BAM in the context of her bankruptcy filing:

15

>
> BY MR. OPPENHEIMER:
> Q. Did you ever bring to the bankruptcy court's attention any of your allegations in this case about pay inequity?
> A. No.

Black Dep. at 306.

59. Despite Ms. Black's deposition having exceeded seven hours and despite Plaintiff's counsel having advised Defendants' counsel that Ms. Black's deposition was over, Defendants' counsel, nevertheless, placed an additional question on the record. *See* Black Dep. 307-308.

> BY MR. OPPENHEIMER:
>
> Did you ever bring to the bankruptcy court's attention any of the facts that you rely on in this case with respect to your claims of hostile work environment? Did you ever bring to the bankruptcy court's attention any of the facts on which you rely in this case for your claims concerning gender discrimination?

Notably, Defendants' counsel could have asked this question at any point prior to the expiration of the 7-hour limit. This conduct is in contrast with Plaintiff's counsel ending prior depositions at seven hours without protest and in compliance with the 7-hour deposition rule.

60. In addition to having this testimony from Ms. Black, Defendants also concede that they can also establish that Ms. Black did not disclose her treatment at BAM in the context of her bankruptcy with documentary evidence that "[n]one of the discrimination claims [Ms. Black] makes in this case were disclosed to the Bankruptcy Court." Oppenheimer Decl. ¶ 6, citing the bankruptcy docket. Thus, it is unclear why Defendants would need a deposition in excess of seven hours, let alone the additional three hours sought on their instant motion.

61. Thus, Defendants conducted a full and complete 7-hour deposition of Ms. Black. Defendants' counsel was in control of the nature of and topics covered during that deposition. Ms. Black's deposition was limited to seven hours, just as Defendants' counsel and timed and limited

16

all other depositions. Defendants are incorrect in contending that the 7-hour time had not run on Ms. Black's deposition. At Ms. Black's deposition, Defendants' counsel did not contend that the seven hours had not expired. *See* Black Dep. at 207. Instead, Defendants' counsel contended that he was entitled to additional time exceeding seven hours based on Plaintiff's counsel's conduct. *See id*. Even then, although Defendants seek an additional 3-hour deposition on their instant motion, Defendants' counsel complained of only a five minute depravation at Ms. Black's deposition. *See* Black Dep. at 207.

62. Given the above, Defendants are not entitled to conduct a deposition of Ms. Black in excess of seven hours; Ms. Black cannot be compelled to testify concerning her confidential communications with Mr. Butterini; and Defendants are not entitled to sanctions, attorneys' fees, or costs. Plaintiff, however, is entitled to attorneys' fees and costs as the prevailing party in opposing Defendants' motion to compel and based on Defendants' counsel improper and unprofessional conduct at depositions and to an elaboration on Defendants' counsel's invocation of a privilege to not testify on behalf of Jamie LaPress, Robert Seibert, and Diane Seibert.

WHEREFORE Plaintiff respectfully requests that the Court issue an Order denying in its entirety Defendants' Motion for an Order: (1) compelling a deposition of Ms. Black in excess of seven hours; (2) compelling Ms. Black to waive attorney-client privilege; (3) for sanctions; and (4) for attorneys' fees and costs. Plaintiff also requests that the Court grant in its entirety Plaintiff's Cross-Motion for an Order: (1) awarding attorneys' fees and costs (*see* FED. R. CIV. P. 37(a)(5)(b), 30(d)(2)) and (2) compelling Defendants to comply with W.D.N.Y. R. CIV. P. 26(d), together with such other and further relief as the Court deems just and proper.

DATED: April 17, 2018        s/ Josephine A. Greco
                             Josephine A. Greco, Esq.